OPINION
{¶ 1} Defendant-appellant Andrea McLaughlin nka Andrea Breznenick appeals the judgment of the Logan County Court of Common Pleas, Domestic Relations Division, denying her motion for reallocation of parental rights and responsibilities. Andrea also appeals the trial court's denial of her motion for contempt against plaintiff-appellee Casey McLaughlin. For the reasons that follow, we affirm the trial court's judgment.
 {¶ 2} Casey and Andrea were married on October 21, 1994. The parties had one child together, Corey McLaughlin (DOB July 31, 1995). On March 31, 2000, the parties' dissolution of marriage was finalized. Casey was designated the sole residential parent and Andrea was granted visitation.
 {¶ 3} Andrea filed a motion for reallocation of parental rights and responsibilities and a motion for contempt against Casey. The trial court appointed Bridget Hawkins to act as Corey's guardian ad litem. The trial court also conducted an in camera interview with Corey.
 {¶ 4} On August 2, 2005, the trial court held a hearing on Andrea's motions. Thereafter, the trial court denied the motion for reallocation of parental rights and responsibilities finding that there was no change in circumstances. The trial court also denied Andrea's contempt motion. *Page 3 
 {¶ 5} It is from this judgment Andrea appeals and sets forth two assignments of error for our review. For clarity of analysis, we will discuss the assignments of error out of the order presented in Andrea's brief.
 ASSIGNMENT OF ERROR NO. II The trial court erred in denying Appellant's motion to hold Appellee in contempt for failing to abide by the court ordered visitation schedule.
 {¶ 6} Andrea argues, in her second assignment of error, that the trial court erred when it did not find Casey in contempt for failing to follow the trial court's visitation order. Andrea argues, 1.) she was denied visitations for failing to confirm visits by Wednesday, 2.) Casey threatened to cancel visitation because Corey had not completed his chores, 3.) Casey threatened to cancel visitation because Andrea had not paid court ordered expenses, and 4.) Casey interfered with visitation over the Easter weekend.
 {¶ 7} An appellate court reviews a trial court's decision in contempt proceedings under an abuse of discretion standard. Saltzman v.Saltzman, 3d Dist. No. 16-02-10, 2002-Ohio-6490, at ¶ 12, citingCollins v. Collins (May 8, 1997), Shelby App. No. 17-97-1, at *3. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, citations omitted. *Page 4 
 {¶ 8} Andrea and Casey's testimony differs regarding the various visitation issues that form the basis of Andrea's contempt motion. Andrea testified that Casey and his wife Linda made up the rule that if she failed to confirm her visit by Wednesday then she would forfeit the visitation, that there were times that Casey and Linda would not let her see Corey because she had not paid them money for receipts, and that Casey has said that if Corey does not finish his chores then he could not go for a visitation. Andrea also testified to the following regarding a missed Easter visitation:
 A. I called the Wednesday before. I was just reminding him, you know Greg and I will be there at 6 to pick up Corey. He said Corey didn't want to come visit you this weekend. I said that is odd. He has always wanted to visit me before. He goes we are having an Easter celebration this weekend at his grandmother's house, and he wants to be there.
 He put Corey on the phone. Corey said, "I don't want to miss it. They are going to have games and fun and everybody is going to be there. I want to go." I said "That is fine. We will make it up some other time. I don't want you to miss that."
 At which point I did not know Casey was still on the phone. He broke in. He said, "You are not his mother. You cannot tell him what he has to do."
 Corey was still on the phone. I said, "Corey, you know what, I will talk to you later, baby."
 Q. Did you makeup that weekend?
 A. No I didn't. After that time I sent an e-mail to Casey saying I was willing to change weekends or trade if that is what he would like. If he didn't respond, I was assuming I was still on to pick him up that weekend. He never responded. Emphasis added. *Page 5 
 {¶ 9} In contrast, Casey testified that Andrea agreed to the Wednesday notification. Casey also denied ever demanding payment for unpaid receipts before Andrea could take Corey on a visitation or threatening to take Andrea's visitation away due to Corey's unfinished chores. Casey testified that
 A. The only thing we ever said about visitation, was we were ordered to send clothes to her house. We cannot send dirty ones, if you don't get the laundry done, we cannot send you. That was on a Wednesday, that was not a Friday where there was any threat. He had never told them at any time he was not coming and we never told them he was not going to go to their house.
 Q. Okay. You don't use that as a threat?
 A. No.
 {¶ 10} Casey testified to the following in regards to the Easter visitation,
 A. * * * Actually we had told Corey that we were going over to her mom's house for a big family get together. He had told us at the time that he was disappointed he was not going to get to be there. We told him if you wanted to be there, he had to tell his mom. If I tell her, she thinks I am trying to take him from her. So I said if you want to stay home this weekend, you tell your mom that you want to stay here. He said okay. So when she called, I gave him the phone. He told her. She told him that she was going to take him next weekend. I told her she couldn't tell him that she was taking him next weekend without checking with us, because next weekend was technically ours, we would need to discuss to makeup the time, not with him on the phone and not telling him that is what was going to happen.
 Q. Could that have happened? *Page 6 
 A. Yes. After the phone conversation was over. We looked at the schedule and the calendar to see what was going on the following weekend. There was nothing. I said next weekend would be fine.
 {¶ 11} In its judgment entry, the trial court found that there was insufficient evidence to hold Casey in contempt for violating the trial court's visitation orders. The trial court further stated that "each party should do their very best to set aside any animosities which exist between the parties and to facilitate each other's time with Corey. The parties clearly need to communicate with each other, despite their personal differences."
 {¶ 12} Based upon the evidence in the record, we are unable to find the trial court abused its discretion in denying Andrea's contempt motion. Casey denied that he had ever denied or threatened to deny Andrea's visitation due to unpaid receipts or Corey's unfinished chores. Furthermore, Andrea's own testimony indicates that she initially agreed to miss the Easter visitation but that she changed her mind following a disagreement over making up the missed visitation. Accordingly, there is competent credible evidence in the record to support the trial court's judgment denying Andrea's contempt motion.
 {¶ 13} Andrea's second assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. I The trial court erred in denying Appellant's motion for reallocation of parental rights and responsibilities. *Page 7 
 {¶ 14} In her first assignment of error, Andrea argues the trial court erred in finding no change of circumstances to warrant the reallocation of parental rights and responsibilities.
 {¶ 15} Pursuant to R.C. 3109.04(E)(1)(a),
 The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child ,* * * and that the modification is necessary to serve the best interests of the child. * * *
Emphasis added.
 {¶ 16} "[W]hether there are changed circumstances is a threshold inquiry that must be determined prior to examining whether a change in parental responsibility would be in the best interests of the child."Fox v. Fox, 3d Dist. No. 5-03-42, 2004-Ohio-3344, at ¶ 38, citingClark v. Smith (1998), 130 Ohio App.3d 648, 653, 720 N.E.2d 973. A change in circumstances must be "a change of substance, not a slight or inconsequential change." Davis v. Flickinger (1997), 77 Ohio St.3d 415,418, 674 N.E.2d 1159, 1997-Ohio-260. In order to have a change of circumstances, "`the change does not have to be quantitatively large, but rather, must have a material effect on the child.'" Tolbert v.McDonald, 3d Dist. No. 1-05-47, 2006-Ohio-2377, at ¶ 31, citingGreen v. Green, 3d Dist. No. 14-03-29, 2004-Ohio-185, at ¶ 7. *Page 8 
 {¶ 17} An appellate court reviews the trial court's determination of whether a change of circumstances has occurred under an abuse of discretion standard. Davis, 77 Ohio St.3d at 416. As previously noted, an abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore, 5 Ohio St.3d at 219.
 {¶ 18} Essentially, Andrea makes three main arguments that a change of circumstances has occurred to warrant the reallocation of parental rights and responsibilities. First, Andrea argues that Corey does not receive proper medical, dental, and vision care and that this constitutes a change of circumstances.
 {¶ 19} The trial court found there was no evidence to demonstrate that Corey was suffering due to the lack of proper medical, dental, or vision care. The trial court stated, "Both parties testified that Corey was not sick but is a healthy ten-year old. This is also consistent with observations made by the Court within the in camera interview of Corey, as well as responses received by the Court from Corey himself."
 {¶ 20} At the hearing, Andrea testified that Corey was not ill but complained that he had a fungus on his feet and warts. Both Casey and the guardian ad litem testified that Corey was not sick.
 {¶ 21} Regarding the dentist, Casey testified that he took Corey to the dentist. Casey further testified that he paid cash for the dental visit, that he did not *Page 9 
tell Andrea about the visit because it was just a "check up", and the "brown spots" on Corey's baby teeth were stains.
 {¶ 22} Moreover, both Andrea and Casey had Corey's eyesight tested. Andrea testified that she took Corey to an optometrist who said that Corey "probably has trouble seeing the board when his eyes got tired", that Corey could wear glasses when his eyes got tired but that Corey did not need glasses all of the time. Casey testified that he took Corey to see a different optometrist who said that Corey did not need glasses but his vision would change drastically and his vision would need to be rechecked in twelve months.
 {¶ 23} Consequently, there is competent credible evidence in the record to support the trial court's determination that Corey is not suffering due to the lack of proper medical, dental, or vision care. The guardian ad litem and Casey both testified that Corey was not sick. Casey also testified that he took Corey to the dentist and the optometrist for checkups.
 {¶ 24} Second, Andrea maintains that Corey has expressed his desire to live with his mother and that this wish standing alone should constitute a change of circumstances. In the alternative, Andrea maintains that Corey's wishes to live with his mother were not based on a whim, but rather, were based on several negatives with living at Casey's house including 1.)Corey's boredom at spending long hours at Casey's business, 2.) the fact that Corey was afraid of hurting his *Page 10 
father and was influenced by how his father reacts, 3.) the lack of communication with Andrea, and 4.) the fact that he is hungry at Casey's house.
 {¶ 25} The trial court conducted an in camera hearing with Corey. During the incamera hearing, Corey expressed his wish to live with his mother. Nevertheless, Corey acknowledged that he would miss his father and his sisters if he went to live with Andrea. Corey also stated that he sometimes leaves hungry at Casey's house but that he is not starving.
 {¶ 26} At the trial, the guardian ad litem testified that Corey gets bored when he stays at his father's business. The guardian ad litem further stated that Corey is "afraid of maybe hurting his father", that Corey is "influenced by how his father reacts", and that Corey is adversely affected by the lack of communication with his mom. However, the guardian ad litem further testified that Corey was not being adversely affected by residing with his father.
 {¶ 27} In its judgment entry, the trial court acknowledged that Corey wished to live with Andrea. However, the trial court determined that it was not going to change parental rights based solely upon Corey's wishes. The trial court further stated, "as no other material change has been found, it would have taken not only positives on his mother's side but negatives on his father's side."
 {¶ 28} A child's wishes regarding custody standing alone is not enough to constitute a change in circumstances. Moyer v. Moyer (Dec. 17, 1996), 10th Dist. *Page 11 
No. 96APF05-659 at * 3, citing Butland v. Butland (June 27, 1996), Franklin App. No. 95APF09-1151. "Rather, a change in the child's wishes and concerns, depending on the facts and circumstances which prompted the change, may form a sufficient basis for finding the requisite change in circumstances." Id.
 {¶ 29} Accordingly, the trial court did not err in determining that Corey's wishes standing alone did not constitute a change of circumstances. Moreover, Corey's wishes combined with the living circumstances at Casey's house are not a change in substance and do not constitute a change of circumstances.
 {¶ 30} Third, Andrea also maintains that Casey and his wife Linda threaten to cancel Andrea's visitation with Corey if Corey does not complete his chores, they interfere with Andrea's communication with Corey, and they talk negatively about Andrea.
 {¶ 31} A custodial parent's interference with a child's visitation by the noncustodial parent may be considered in determining whether a change of circumstances has occurred. Clark v. Smith (1998),130 Ohio App.3d 648, 654, 720 N.E.2d 973, quoting Holm v. Smilowitz (1992),83 Ohio App.3d 757, 773, 615 N.E.2d 1047. In Clark v. Smith, this court found that the trial court did not abuse its discretion in finding that a mothers "repeated interference" with the father's visitation constituted a change of circumstances. Id. *Page 12 
 {¶ 32} In our previous discussion of this case, we found that the trial court did not abuse its discretion in determining that there was insufficient evidence that Casey violated the trial court's visitation orders. Correspondingly, there is insufficient evidence that Casey interferes with Andrea's visitation with Corey.
 {¶ 33} Further, there is insufficient evidence that Casey interferes with Andrea's communication with Corey. Andrea testified that when she calls to speak to Corey that the answering machine will pick up the telephone call and that Corey tells her he wants to pick up the telephone but is not allowed, that Corey has trouble using the telephone card she provided, and that she gave Corey a cell phone in order to communicate with her but Casey will not allow Corey to have it. However, Casey testified that he did not stop Corey from taking Andrea's telephone calls, that Corey has used the telephone calling card by himself, and that he tells Corey about the telephone messages and the fact that his mother wants him to call her back. Casey further testified that Corey has his own e-mail and a computer in his room which he can use to contact his mother.
 {¶ 34} Corey testified at the incamera hearing that Casey and his wife Linda would sometimes say negative things about Andrea, such as, that she was trying to be Corey's friend instead of his mother and that Andrea buys him too many things. However, there is no indication that the comments are negative to such an extent that they would constitute a change in circumstances. *Page 13 
 {¶ 35} Given the evidence in the record, we find there is insufficient evidence to find a change of circumstances based upon interference with visitation, interference with communication, or a parent negatively discussing the nonresidential parent.
 {¶ 36} Finally, Andrea argues the trial court acknowledged a change of circumstances when it promised to increase visitation beyond the standard visitation to the non-residential parent.
 {¶ 37} The trial court's mere mention of the fact that it was going to increase the visitation of the non residential parent does not necessarily mean that the trial court acknowledged a change of circumstances had occurred to warrant the reallocation of parental rights and responsibilities.
 {¶ 38} After reviewing the entire record, we hold that the trial court did not abuse its discretion in finding no change of circumstances had occurred. The facts and circumstances in this case, even when considered together, do not constitute a change of circumstances to warrant the reallocation of parental rights and responsibilities. Andrea's first assignment of error is, therefore, overruled.
 {¶ 39} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 ROGERS, P.J., and SHAW, J., concur. *Page 1