[Cite as *Dodson v. Bullinger*, 2010-Ohio-6263.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## VAN WERT COUNTY


EUGENE D. DODSON,

    PLAINTIFF-APPELLEE,               CASE NO. 15-10-06

    v.

SOMER B. BULLINGER,             O P I N I O N

    DEFENDANT-APPELLANT.


**Appeal from Van Wert County Common Pleas Court,
Juvenile Division
Trial Court No. 202300012**

**Judgment Affirmed**

**Date of Decision:   December 20, 2010**


APPEARANCES:

    *Joseph A. Benavidez*  for Appellant

    *Martin D. Burchfield*  for Appellee

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant, Somer B. Bullinger ("Somer"), appeals the judgment of the Van Wert County Court of Common Pleas, Juvenile Division, designating plaintiff-appellee, Eugene D. Dodson ("Eugene"), as the residential parent of the parties' child. Somer claims that the trial court erred when it found that a change in the circumstances had occurred since the issuance of the prior custody decree, and that it was in their child's best interest to modify the parties' existing decree allocating their parental rights and responsibilities.

{¶2} Somer and Eugene are the parents of a son, Chandler, who was born in October of 2001. At the time Chandler was born, Somer was nineteen years old and Eugene was still a minor. Somer and Eugene did not have a relationship during Somer's pregnancy. Eugene was not listed as Chandler's father on the birth certificate.

{¶3} In March of 2002, after he turned eighteen, Eugene filed a paternity action in the Van Wert County Juvenile Court and established that he was Chandler's father. In November of 2002, the parties reached a mutual agreement regarding the custody arrangements for Chandler and submitted the agreement to the court. Somer was named Chandler's primary residential parent, and Eugene was given visitation on specified days and holidays.

{¶4} On February 13, 2009, Eugene filed a Motion for Modification of Residential Placement alleging that Chandler was "not doing well" living with Somer and that it would be in his best interest for Eugene to be named his residential parent. On June 9, 2009, a hearing on Eugene's motion was held before the magistrate. The magistrate heard the testimony of Somer and Eugene, along with the testimony of personnel from Chandler's elementary school and friends and relatives of each party.

{¶5} Testimony from Chandler's teacher and the elementary school principal, Principal Manz, indicated that, although Chandler performed well academically, he exhibited some disruptive behavioral issues when interacting with the other students. Principal Manz testified that Chandler had trouble with impulse control, which required her to intervene on several occasions to discipline him. Principal Manz further testified that the school had a policy of prohibiting the bus driver from leaving the younger children at the bus stop if there was not an adult present to receive the child. Principal Manz stated that on several occasions the bus driver was required to return Chandler to the school because there was no one at the bus stop to meet him. Principal Manz' testimony also confirmed that Chandler, in second grade at the time of the hearing, was either absent or tardy for a number of days during the school year, and that he had missed a total of 18 days in the first grade and 15 days in Kindergarten.

**{¶6}** Another issue of concern raised at the hearing was Somer's refusal to immunize Chandler. Somer filed an immunization exemption with the school stating that she was a pagan as the basis for the exemption. On the stand, Somer explained that she was not actually a pagan, but a "naturalist" who uses natural remedies for ailments. Somer further explained that she was not comfortable with inoculating her children with "chemicals." However, Somer also testified that she took Chandler for regular wellness appointments with his family doctor.

**{¶7}** The testimony also revealed that Chandler lived with Somer and his two siblings from a different father. Somer testified that she became involved with Emiliana Yunez, aka "Nano," when she was pregnant with Chandler. Somer and Nano lived together for five years and had two children together who were close in age to Chandler. Somer testified that Nano is a father figure to Chandler and that Chandler referred to Nano as "Brown Daddy" and Eugene as "White Daddy." At the time of the hearing, Somer and Nano had been living apart for two years. Nano had visitation with their two children every other weekend—the opposite weekend that Eugene had custody of Chandler. Somer confirmed that when Nano picked up his children, he would also take Chandler for the weekend resulting in Somer not having Chandler for many of the weekends throughout the year.

{¶8} Eugene testified about his concern with Somer's care of Chandler. Eugene was especially troubled with Somer's lack of discipline of Chandler which he believed resulted in Chandler's behavioral issues at school. Eugene also expressed concern with Chandler's hygiene while in Somer's care, stating that he was especially troubled by Chandler's poor dental health.

{¶9} Eugene also testified that many things had changed regarding his residential situation since the issuance of the last custody decree. When the parties first submitted their parenting agreement to the court, Chandler was barely a year old and Eugene was just eighteen. Now in his mid-twenties, Eugene had secured a steady job as a customer service representative with Verizon Wireless in the Toledo area. Eugene testified that Chandler had his own room in his apartment. and stated that he would be able to ensure that Chandler made it to and from school without any problems if he were named Chandler's residential parent. Eugene also revealed that he contracted the HIV virus when he was nineteen, but has been on medication which suppresses the virus and allows him to maintain a healthy white blood cell count. Eugene also revealed that he was extremely educated about his health condition and understood the necessary precautions to be taken to prevent the transmission of the virus.

{¶10} June 24, 2009, Eugene filed a Motion For Contempt. As the basis for the motion, Eugene alleged that after the conclusion of the hearing Somer had

interfered with Eugene's visitation with Chandler. Specifically, Eugene alleged that Somer prohibited him from seeing Chandler during the weekend of June 12, 2009—one of Eugene's visitation weekends—and only permitted Eugene to see Chandler for two hours on Father's Day—also a day scheduled for Eugene's visitation. Eugene's motion also stated that Somer failed to maintain a working phone number, preventing Eugene from having contact with Chandler. The magistrate ordered Somer to appear and show cause for her interference with Eugene's visitation. After the hearing, the magistrate found Somer to be in contempt.

{¶11} On August 7, 2009, the magistrate overruled Eugene's Motion for Modification of Residential Placement. Specifically, the magistrate found that "[n]o evidence was adduced to demonstrate that a change in the circumstances of the child or residential parent of the child had occurred that would otherwise warrant a reallocation of parental rights and responsibilities." (Aug. 7, 2009 J.E., p. 1). Eugene subsequently filed objections to the magistrate's decision to the Van Wert County Juvenile Court, asserting that there was ample evidence to support a finding that a change in the circumstances had occurred since the prior decree allocating the parties' parental rights.

{¶12} The trial court sustained Eugene's objections and found that the requisite change in the circumstances had occurred. The court then remanded the

case to the magistrate to determine whether a change in Chandler's residential placement would be in his best interest. On January 19, 2010, a hearing regarding the best interest determination was held before the magistrate. Somer and Eugene were the only witnesses to testify. On the same day, Eugene filed a notice with the court stating that he intended to relocate his residence from Toledo to the Columbus area due to a job transfer.

**{¶13}** The magistrate subsequently issued a supplemental decision regarding the best interest determination. The magistrate found that it was in Chandler's best interest to designate Eugene as his residential parent and legal custodian. The magistrate also found that the harm likely to be caused by a change in the present environment to Chandler is outweighed by the advantages of the change in environment. Somer was granted parenting time in accordance with the local rules.

**{¶14}** Somer timely filed her objections to the magistrate's decision, asserting that the magistrate did not adequately consider the statutory factors in rendering his decision. The trial court overruled Somer's objections and on May 25, 2010, entered judgment in accordance with the magistrate's decision.

**{¶15}** It is from this judgment that Somer timely appeals, raising the following assignment of error for our review.

*Assignment of Error*

**The trial court's finding that appellee shall be designated the residential parent and legal custodian of the parties' minor child is against the manifest weight of the evidence.**

{¶16} In her sole assignment of error, Somer argues that the trial court's designation of Eugene as Chandler's residential parent and legal custodian was against the manifest weight of the evidence. In rendering a decision on whether to modify an existing decree allocating parental rights, a trial judge must have wide latitude in considering all the evidence before the court and such a decision must not be reversed absent an abuse of discretion. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 523 N.E.2d 846. The Supreme Court of Ohio further elaborated on our standard of review in custody cases in *Davis v. Flickinger*, 1997-Ohio-260, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159:

> **The standard for abuse of discretion was laid out in the leading case of *C.E. Morris Co. v. Foley Constr. Co*. (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, but applied to custody cases in *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus:**
>
> **'Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. (*Trickey v. Trickey* [1952], 158 Ohio St. 9, 47 O.O. 481, 106 N.E.2d 772, approved and followed.)'**
>
> **The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page.**

**{¶17}** The trial court's discretion in determining parental rights must remain within the confines of the relevant statutory provisions. *Miller*, 37 Ohio St.3d at 74, 523 N.E.2d 846. Section 3109.04(E)(1) of the Revised Code governs a court's authority to modify a prior decree allocating parental rights. This section sets out in great detail the court's duties and responsibilities in dealing with these issues. *Badgett v. Badgett* (1997), 120 Ohio App.3d 448, 450, 698 N.E.2d 84.

**{¶18}** Specifically, R.C. 3109.04(E)(1)(a) expressly authorizes a court to modify an existing decree allocating parental rights and responsibilities. See *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 57, 2007-Ohio-5589, ¶ 21, 876 N.E.2d 546 (interpreting the statute). The relevant statutory provision states, in part:

> **(a)   The court *shall not modify a prior decree* allocating parental rights and responsibilities for the care of children *unless it finds*, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, *that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, <u>and</u> that the modification is necessary to serve the best interest of the child.* In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:**

> **\* \* \***

> **(iii)  The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.**

R.C. 3109.04(E)(1)(a).  (Emphasis added).

{¶19} In the instant case, the trial court, after reviewing Eugene's objections to the magistrate's initial decision, found that a change in the circumstances had occurred to warrant the modification of the parties' prior custody decree. In its Judgment Entry, the trial court cited several factors that it found pertinent in making its ruling. While, the court found that Chandler, age nine at the time of the ruling, had significantly matured since the issuance of the existing custody decree eight years earlier,[1] the court was also concerned by Chandler's consistently poor attendance record over the last three school years. The court further found it problematic that on several occasions Somer had failed to meet or arrange for an adult to meet Chandler at the bus stop, requiring the bus driver to take Chandler back to the school.

{¶20} Regarding Chandler's residential placement with Somer, the trial court was troubled by the fact that Chandler spent almost every weekend away from Somer. Specifically, on the weekends that Chandler was not with Eugene, he was typically with Nano, whom Chandler referred to as his "Brown Daddy." The court was also concerned that Somer appeared to have "numerous other paramours" at her residence while the children were there. The trial court also noted its doubts about Somer's credibility regarding her belief against immunizing Chandler because she gave inconsistent testimony on the matter.

---

[1] We note that maturation is a fact which is in contemplation by the court at the time of the prior decree. Thus, we do not rely upon this fact alone.

**{¶21}** In reviewing whether the evidence presented in this case demonstrated that a change in the circumstances had occurred, we are reminded that the change must be of substance, not slight or inconsequential. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 1997-Ohio-260, 674 N.E.2d 1159. In addition, R.C. 3109.04(E)(1)(a) does not require that the change be "substantial," nor does " the change * * * have to be quantitatively large, but rather, must have a material effect on the child." *McLaughlin v. McLaughlin-Breznenic*, 3rd Dist. No. 8-06-06, ¶ 16, 2007 -Ohio- 1087 citing, *Davis*, 77 Ohio St.3d at 417-18, 674 N.E.2d 1159. Moreover, we note that the passage of time during a significant developmental portion of a child's life, combined with other pertinent factors may support a trial court's finding of a change of circumstances, requiring further inquiry into the best interest of the child by a trial court. See *In re Tolbert v. McDonald*, 3rd Dist. No. 1-05-47, 2006-Ohio-2377, ¶ 32; see, also *Butler v. Butler* (1995), 107 Ohio App.3d 633, 637 (reasoning that the passage of time during which a child progresses from infant to school age qualifies as a change in circumstances when viewed in light of other factors).

**{¶22}** After reviewing the record before us, the evidence supports the trial court's finding that a change in the circumstances had occurred regarding both Somer and Chandler. Chandler was just a year old and barely had a relationship with Eugene when the prior decree designating Somer as his residential parent was

filed with the court. Nearly eight years later, Chandler now had a strong relationship with Eugene. However, according to the testimony from school personnel, Chandler clearly struggled with impulse control and acting out when around the other students. Also at the time the prior decree was issued, Somer was in a committed relationship with Nano. As discussed by the court, Somer and Nano have since ended their relationship. Somer also moved her residence frequently, appearing to be living with less stability in her life with regard to her income and housing.

{¶23} Moreover, the record before us demonstrates that a change in the circumstances had occurred regarding not only Somer and Chandler, but Eugene as well. Eugene was just eighteen when he filed for visitation with Chandler. Since then he had continued to exercise his visitation with Chandler, allowing the two to develop a strong relationship. Furthermore, the testimony also revealed that despite being a young teenager when Chandler was born, over time Eugene had become a responsible father. Based on these considerations, we conclude the evidence supports the trial court's finding that a change in the circumstances having a material effect on Chandler had occurred.

{¶24} Upon finding that the requisite change in the circumstances had occurred, the trial court noted that the magistrate failed to make any rulings on whether the modification of custody was in Chandler's best interest and whether

the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to Chandler. The trial court remanded this case to the magistrate to make these determinations. The magistrate conducted another hearing regarding these matters where both Somer and Eugene provided additional testimony. The magistrate incorporated by reference the evidence adduced from the prior hearing into the record. Eugene's notice of relocation from Toledo to Dublin, Ohio, based on a job transfer was also considered by the magistrate at the hearing.

{¶25} Eugene confirmed that he planned to move from Toledo because his employer intended to close the call center located there and requested that he relocate to Dublin to work at the newly built regional call center. Eugene testified that at the time of the hearing he had already looked at schools in the Dublin area for Chandler to attend.

{¶26} Eugene further testified that since the prior hearing Somer agreed to place Chandler on medication for ADHD, despite her "naturalist" convictions, in order to address his behavioral issues at school. This particularly concerned Eugene because Somer did not involve him in the decision to begin medicating Chandler nor did she even mention to Eugene that Chandler was on medication. As a result, Chandler was not on his medication the weekends that he was with Eugene.

{¶27} Eugene also expressed his concern about Somer's commitment to making changes in how she cares for Chandler. Specifically, Eugene testified that Somer addressed some of the issues highlighted in the last hearing in response to the "pressure" from being scrutinized in the court proceedings. Eugene stated that "when we filed [for custody] things started improving and then when we got the Magistrate's Decision to rule in her favor it started getting worse." (Hrg. Jan 19, 2010 p. 18).

{¶28} Eugene also revealed that since the previous hearing he had been charged and convicted with a drug paraphernalia offense, a misdemeanor of the fourth degree. As a result of his conviction, Eugene was ordered to pay a fine and was given limited driving privileges for six months which permitted Eugene to drive to and from work and to pick up Chandler for visitation.

{¶29} Somer testified that her herbal remedies were not sufficient in helping with Chandler's behavioral issues at school. Somer testified that she then enlisted the help of her family physician, and together they decided to put Chandler on medication for ADHD. Somer confirmed that Chandler did not take the medication on the weekends and that she did not intend to keep him on the medication in the summer, stating that the medication was for school only.

{¶30} Somer revealed that nothing had changed with her custody arrangements with Nano on the weekends. Chandler still went with Nano on most

weekends that he had custody of his own two children. Somer also testified that she had moved into a new residence where she lived with her three children and a male "friend." Somer denied that this man was anything more than a friend and explained that although he did not pay rent, he did the "manly" things around the residence in exchange for living there.

**{¶31}** After hearing the evidence, the magistrate determined that it was in Chandler's best interest to designate Eugene as his residential parent. The magistrate further concluded that "any harm occasioned by a change in the present environment of the child is outweighed by those advantages available in the implementation of this modification." (Jan. 26, 2010 J.E., p. 3).

**{¶32}** On appeal, Somer contends that the magistrate failed to adequately consider the statutory factors when he determined that modifying the custody decree was in Chandler's best interest.

**{¶33}** R.C. 3109.04(F) provides a list of non-exclusive factors for the trial court to consider in determining the best interest of the child. These factors include:

(a) **The wishes of the child's parents regarding the child's care;**

(b) **If the court has interviewed the child in chambers pursuant to division (B) of this section \* \* \*, the wishes and concerns of the child, as expressed to the court;**

(c) **The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;**

(d) **The child's adjustment to the child's home, school, and community;**

(e) **The mental and physical health of all persons involved in the situation;**

(f) **The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;**

(g) **Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;**

(h) **Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child;** * * *

(i) **Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;**

(j) **Whether either parent has established a residence, or is planning to establish a residence, outside this state.**

**{¶34}** In addressing Somer's contention, we note that even though R.C. 3109.04(F) provides a list of factors for the trial court to consider in determining the best interest of the child, there is no requirement that the trial court set out an analysis of each factor in its judgment entry, so long as the judgment entry is

supported by a substantial amount of competent, credible evidence that the best interest of the child was considered. *Bunten v. Bunten* (1998), 126 Ohio App.3d 443, 447, citing *Masitto v. Masitto* (1986), 22 Ohio St.3d 63. In determining whether a modification of the custody decree was in Chandler's best interest, the magistrate listed several factors it found pertinent in its consideration of the matter. Each of these factors was directly supported by the testimony discussed above.

{¶35} Our review of the record indicates that the findings that a change in circumstances occurred, that it was in Chandler's best interest to designate Eugene as the residential parent, and that the advantages of the change of environment outweighed any harm likely to be caused by the change in environment are all supported by a substantial amount of competent, credible evidence. Therefore, we cannot find that the magistrate abused its discretion in designating Eugene as the residential parent or that the trial court abused its discretion in affirming the magistrate's decision. Accordingly, Somer's assignment of error is overruled.

{¶36} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS, J., concurs in Judgment Only.**
**PRESTON, J., concurs.**

**/jlr**