[Cite as *Wallace v. Willoughby*, 2013-Ohio-524.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
SHELBY COUNTY

WILLIAM WALLACE, IV,

    PLAINTIFF-APPELLANT,           CASE NO. 17-12-10

    v.

AMBER WILLOUGHBY, NKA
HERRON,                       O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Shelby County Common Pleas Court
Juvenile Division
Trial Court No. 2002 PAT 0002

Judgment Reversed and Cause Remanded

Date of Decision: February 19, 2013

APPEARANCES:

    *Roberta S. Roberts* for Appellant

    *Jay M. Lopez* for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, William Wallace IV ("Wallace"), appeals the judgment of the Court of Common Pleas of Shelby County, Juvenile Division, granting custody of William Wallace V ("William") to Plaintiff-Appellee, Amber Willoughby nka Herron ("Amber"). On appeal, Wallace contends that the trial court committed the following errors: (1) the trial court erred when it found that a change in circumstances occurred with regard to William; (2) the trial court erred when it found that placing William in Amber's custody was in his best interest; and (3) the trial court erred when it did not consider whether the harm likely to be caused by a change in environment is outweighed by the advantages of the change of environment to the child. Based on the following, we reverse the trial court's judgment.

{¶2} Amber and Wallace, who never married, had two children together, William, born in December 1997, and Seth, born in February 1999 (collectively "the children"). In February 2003, Amber and Wallace filed a joint motion for shared parenting of the children. In March 2002, the trial court issued a shared parenting decree.

{¶3} In March 2003, Amber filed a motion requesting termination of the shared parenting plan and for designation as residential parent. In November 2003, the trial court issued a judgment entry modifying the parental rights and

responsibilities, naming Amber as the children's residential parent and legal custodian. Subsequently, Amber married Fred Herron ("Herron"). Amber and Herron have two children together, Levi, born in September 2006, and Roslyn, born in October 2007.

{¶4} In January 2010, Wallace filed a "Motion to Reallocate Parental Rights and Responsibilities, or in the Alternative, Shared Parenting." In February 2010, the magistrate conducted separate *in camera* interviews of William and Seth. Seth, who was 11 years old at the time, expressed a strong preference to reside with Wallace, whereas William, who was 12 years old at the time, did not have an opinion on the matter.

{¶5} In March 2010, the matter proceeded to a final hearing. Upon considering the testimony and evidence presented during the final hearing, as well as the *in camera* interviews with William and Seth, the magistrate recommended that Wallace be designated as the children's residential parent.

{¶6} In April 2010, Amber filed objections to the magistrate's decision. In May 2010, the trial court overruled Amber's objections and designated Wallace as the children's residential parent. Amber subsequently appealed the trial court's decision to this court. In June 2011, we overruled Amber's assignments of error and affirmed the trial court's decision. *Wallace v. Willoughby*, 3d Dist. No. 17-10-15, 2011-Ohio-3008.

{¶7} In July 2011, Amber filed a "Motion to Reallocate Parental Rights and Responsibilities" requesting that she be designated as the children's residential parent. On September 15, 2011, the case was transferred from the magistrate's docket to the judge's docket. On September 28, 2011, the trial court appointed a Guardian Ad Litem ("GAL") to represent the children's interests.

{¶8} In November 2011, the GAL filed a report and recommendation. The GAL recommended that Seth remain in Wallace's custody, per his preference, and that Amber be granted custody of William. The GAL's recommendation stated that it rarely recommends splitting up children into different households, but due to William's adamant preference to live with Amber and the ability to craft an order that would allow the children to be together nearly every evening and weekend, the GAL felt that it would be appropriate to split the children into different households.

{¶9} On February 9, 2012, the matter proceeded to a final hearing. Amber called, Diane Vorhees ("Vorhees"), the assistant principal at Sidney Middle School, as her first witness. Vorhees testified that Seth has several disciplinary issues, but reported no such issues with William.

{¶10} Next, Amber called Wallace as on cross-examination. Wallace testified that William does well in school and is involved in wrestling, football, and track. Wallace acknowledged that the GAL's report stated that William felt

more comfortable with Amber, but testified that William is also comfortable with him and has exhibited no signs of unhappiness.

**{¶11}** Next, Amber testified that she filed the motion to reallocate parental rights and responsibilities because the children were behaving differently and were unhappy. Amber testified that since the prior custody decree William has become "very clingy" with her during visitation, and cries at the conclusion of their visitation. Hearing Tr., p. 45. In addition to being close with her, Amber testified that William is also close to Herron. Amber further testified that she had moved to Sidney in July 2011 to be closer to the children, and currently has a flexible work schedule which allows her to spend more time with the children.

**{¶12}** Amber called Herron as her final witness. Herron, a pastor at the Ansonia United Methodist Church, testified that he has a good relationship with the children, that Seth comes with him to church, and that William is very open with him. Herron also testified that he thought Amber's sadness over the prior court decision weighs on the children.

**{¶13}** After Herron testified, Amber entered her exhibits into evidence and rested.

**{¶14}** Wallace called Alisha Wallace ("Alisha"), his wife, as his first witness. Alisha testified that the children have adjusted well to living with her and Wallace since the prior custody decree, explaining that they are happy and doing

well in school. Alisha testified that there have been several occasions where visitation has been rescheduled due to the children's extracurricular activities. Alisha further testified that she has never witnessed any conflict during visitation exchanges, but has noticed that William and Amber become emotional during the exchanges.

{¶15} Wallace testified that since the prior custody decree the children have been happy and are doing well at home and school. Wallace acknowledged that William and Amber occasionally become emotional during visitation exchanges. William testified that he believed Amber influenced William's preference to live with her. William further testified that he strongly believes that it would be in the children's best interest to remain together because they have always resided together and depend on each other.

{¶16} After the hearing, the trial court, upon Amber's request, conducted separate *in camera* interviews of William and Seth.

{¶17} On March 16, 2012, the trial court filed its entry granting Amber's motion for custody of William but denying Amber's motion as it pertained to Seth. The judgment entry provided, in relevant part, as follows:

> [T]he starting point for the Court is to determine whether or not Amber Herron has proven a change of circumstances as to William V and Seth. * * *
>
> In determining whether a change in circumstances has occurred as to Seth, the evidence is clear that Seth should continue to reside in the

custody of his father. Despite his struggle with school conduct, Seth is a happy and healthy child. He is a good student, involved in school and community activities and has a good relationship with both parents, step-parents and siblings. There is no doubt that Seth's wishes, expressed to the guardian and the Court, to continue to reside with his father are self-determined. As such, Amber Herron has not succeeded in her burden (as to proving a change of circumstances) and no further analysis is necessary as it relates to Seth.

As to William V, the issue is more complex. Previously, William V expressed (to the Court) no preference as to the parent with whom he wished to reside. However, that has changed and now William V is adamant on his wishes to reside with his mother. With his mother's recent relocation to Sidney, the guardian ad litem agrees with William V's wishes, and recommends modification. * * * But William V's wishes, alone, *do not* constitute a change of circumstances to warrant the modification. (See generally, *Moyer v. Moyer*, 1996 Ohio App. LEXIS 5762).

To this end the Court has examined the totality of the evidence and considers the following changes that have occurred and are now part of William V's everyday life:

His mother has relocated to Sidney;
He has a significant relationship with Levi and Roslyn, his half brother and sister;
His mothers [sic] flexible work schedule is beneficial to their relationship;
Seth confirmed and supported William V's wishes * * *; and
William V's relationship with his mother is closer now than before.

These factors, together with William V's wishes (to reside with his mother) convince the Court that a change in circumstances regarding William V has occurred. Accordingly, Amber Herron has met her burden as to the issue of change of circumstances and further analysis regarding modification is necessary. (Docket No. 211, p. 4-5).

{¶18} It is from this judgment that Wallace files this timely appeal, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED WHEN IT FOUND THAT A SUBSTANTIAL CHANGE IN CIRCUMSTANCES HAD OCCURRED WHEN THE ONLY CHANGE WAS WILLIAM V'S PRIOR NEUTRAL PREFERENCE CHANGED TO A PREFERENCE TO LIVE WITH HIS MOTHER.**

*Assignment of Error No. II*

**THE TRIAL COURT ERRED WHEN IT HELD IT WAS IN THE BEST INTEREST OF WILLIAM V FOR THE MOTHER TO BE NAMED RESIDENTIAL PARENT. THE TRIAL COURT HAS SEPARATED WILLIAM V FROM HIS BROTHER AND HAS CREATED A CONSTANT TUG OF WAR BETWEEN THE PARENTS.**

*Assignment of Error No. III*

**THE TRIAL COURT ERRED WHEN IT DID NOT CONSIDER WHETHER THE HARM LIKELY TO BE CAUSED BY A CHANGE IN THE ENVIRONMENT BY A CHANGE IN THE RESIDENTIAL PARENT WAS OUTWEIGHED BY THE ADVANTAGE OF THE CHANGE OF ENVIRONMENT FOR THE PARTIES' MINOR CHILDREN. SPECIFICALLY, THE HARMFUL EFFECTS CAUSED BY SEPARATING THE TWO BROTHERS.**

*Assignment of Error No. I*

{¶19} In his first assignment of error, Wallace contends that the trial court abused its discretion when it found that a change in circumstances had occurred with respect to William. Specifically, Wallace maintains that the only change that

has occurred since the prior custody decree is William's preference to reside with Amber. Wallace argues that William's preference alone is insufficient to establish a change in circumstances. Conversely, Amber contends that the trial court did not base its finding solely on William's preference to reside with her, but instead viewed that preference in light of the totality of the circumstances. As a result, Amber argues that the trial court did not abuse its discretion when it found that a change in circumstances had occurred with respect to William. We agree with Wallace.

{¶20} Decisions concerning child custody matters rest within the sound discretion of the trial court. *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). Custody determinations are some of the most difficult and agonizing decisions a trial judge must make, and, therefore, appellate courts must grant wide latitude to their consideration of the evidence. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). As such, a reviewing court will not reverse a trial court's decision regarding child custody absent an abuse of discretion. *Masters v. Masters*, 69 Ohio St.3d 83, 85 (1994).

{¶21} A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *See State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, ¶ 17-18 (2d Dist.), citing *Black's Law Dictionary* 11 (8th Ed.2004). When applying the

abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶22} R.C. 3109.04(E)(1)(a) authorizes a trial court to modify or terminate a prior decree allocating parental rights and responsibilities. The statute outlines what a court must consider in its determination of whether a modification of a prior custody decree is warranted. Specifically, R.C. 3109.04(E)(1)(a) states the following regarding modification of a prior custody decree:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
>
> (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
>
> (ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
>
> (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶23} When a trial court is asked to modify a prior custody decree, it must first determine whether a change in circumstances has occurred with respect to the child or the residential parent since the prior decree. *Wyss v. Wyss*, 3 Ohio App.3d 412, 414 (10th Dist. 1982). This finding should be made prior to weighing the child's best interest. The purpose of requiring a finding of a change in circumstances is to prevent constant relitigation of issues that have already been determined by the trial court. *Clyborn v. Clyborn*, 93 Ohio App.3d 192, 196 (3d Dist. 1994). Therefore, the modification must be based upon some fact that has arisen since the prior custody decree or was unknown at the time of the prior custody decree. R.C. 3109.04(E)(1)(a).

{¶24} In reviewing whether the evidence presented in this matter demonstrates that a change in circumstances has occurred, we are mindful that the change must be of substance, not slight or inconsequential. *Davis*, 77 Ohio St.3d at 418. In addition, R.C. 3109.04(E)(1)(a) does not require that the change be "substantial," nor does "the change * * * have to be quantitatively large, but rather, must have a material effect on the child." *McLaughlin v. McLaughlin-Breznenick*, 3d Dist. No. 8-06-06, 2007-Ohio-1087, ¶ 16, citing *Tolbert v. McDonald*, 3d Dist. No. 1-05-47, 2006-Ohio-2377, ¶ 31.

{¶25} Initially, we note that the trial court did not find that a change in circumstances occurred with respect to Wallace, the residential parent.[1] Indeed, review of the record reveals that the circumstances surrounding Wallace had not changed since the prior decree. According to the trial court's thorough analysis, the only change in circumstances occurred with respect to William. Therefore, we must determine whether the trial court abused its discretion when it found that a change in circumstances occurred with respect to William.

{¶26} Wallace correctly argues that "[a] child's wishes regarding custody standing alone is not enough to constitute a change in circumstances." *McLaughlin* at ¶ 28, citing *Moyer v. Moyer*, 10th Dist. No. 96APF05-659 (Dec. 17, 1996), citing *Butland v. Butland*, 10th Dist. No. 95APF09-1151 (June 27, 1996). However, "a change in the child's wishes and concerns, depending on the facts and circumstances which prompted the change, *may* form a sufficient basis for finding the requisite change in circumstances." (Emphasis sic.) *Id*.

{¶27} In its judgment entry, the trial court correctly acknowledged that "William's * * * wishes, alone, *do not* constitute a change of circumstances to warrant * * * modification." (Emphasis sic.) (Docket No. 211, p. 4). Despite this acknowledgment, the trial court found that a change in circumstances had occurred

---

[1] We also recognize that a change in circumstances may also occur if the circumstances of either parent subject to a shared parenting decree change. R.C. 3109.04(E)(1)(a). Such a change in circumstances, however, cannot be present in this case since the parties were not subject to a shared parenting decree when Amber filed her motion to reallocate parental rights and responsibilities.

with respect to William. In so finding, the trial court relied on the following facts: (1) Amber relocated to Sidney where William resides with Wallace and attends school; (2) William has a significant relationship with his step-siblings, Levi and Roslyn; (3) Amber has a flexible work schedule that is beneficial to her and William's relationship; (4) Seth confirmed and supported William's preference; and (5) William's relationship with his mother is closer now than before. These facts, however, do not support the trial court's finding that a change in circumstances has occurred with respect to William.

{¶28} First, the record reveals that the William's relationship with his step-siblings, Levi and Roslyn, as well as Seth's support of William's preference to live with Amber is essentially unchanged since the prior decree. As previously discussed, a finding that a change in circumstances has occurred must be based upon some fact or facts that have arisen since the prior custody decree or were unknown to the trial court at the time of the prior custody decree. R.C. 3109.04(E)(1)(a). Comparison of the evidence adduced in relation to the prior decree and the evidence adduced in relation to the present decree reveals that William's relationship with Levi and Roslyn has always been close and positive.

{¶29} As for Seth's support of William's preference to live with Amber, a comparison of the evidence adduced in relation to the prior decree and the evidence adduced in relation to the present decree reveals that Seth never

expressed a preference that he and William reside with the same parent. Instead, the record reveals that Seth has consistently been amenable to William residing with Amber while he remains with Wallace. Given the foregoing, the trial court's reliance on William's relationship with Levi and Roslyn and Seth's support of William's preference to live with Amber was both unreasonable and contrary to the dictates of R.C. 3109.04(E)(1)(a).

{¶30} Next, Amber's relocation to Sidney and her flexible work schedule bear no significance in determining whether a change in circumstances has occurred with respect to William. A change in the non-residential parent's circumstances is generally irrelevant. *Jones v. Jones*, 4th Dist. No. 06CA25, 2007-Ohio-4255, ¶ 28, citing *Morgan v. Morgan*, 4th Dist. No. 06CA15, 2006-Ohio-6615; R.C. 3109.04(E)(1)(a) (specifically limiting a change in circumstances to situations involving the child, the residential parent, or either parent apart of a shared parenting decree). Under the circumstances of this matter, Amber's relocation and her flexible work schedule are irrelevant, as these facts provide no insight into how William's circumstances have changed. Accordingly, the trial court's reliance on Amber's relocation to Sidney and her flexible work schedule was both unreasonable and contrary to the dictates of R.C. 3109.04(E)(1)(a). *Barto v. Barto*, 3d Dist. No. 5-08-14, 2008-Ohio-5538, ¶ 28 (affirming denial of transfer of residential parent because "a change of residence of the non-residential

parent is irrelevant * * * to * * * the change in circumstances requirement."), citing *Jones*, 2007-Ohio-4255, ¶ 29.

{¶31} In light of the foregoing, the only relevant factor the trial court relied upon, in addition to William's preference to reside with Amber, is the close nature of William's and Amber's relationship. The nature of their relationship, however, is not enough, under the circumstances of this matter, to establish that a change in circumstances has occurred with respect to William. The record reflects that William and Amber have always shared a close relationship. Unsurprisingly, their relationship has developed in the two years since the prior custody decree, which has resulted in William's preference to live with Amber. But, aside from William's preference and the close nature of his relationship with Amber, William's circumstances are otherwise unchanged. In fact, the record reveals that William is doing very well with Wallace. As a result, we find that the trial court abused its discretion when it found that a change in circumstances had occurred with respect to William.

{¶32} Accordingly, we sustain Wallace's first assignment of error.

*Assignments of Error Nos. II & III*

{¶33} In his second and third assignments of error, Wallace contends that the trial court erred when it found that it would be in William's best interest to reside with Amber and that the harm likely to be caused by designating Amber as

William's residential parent is outweighed by the advantages of designating Amber as William's residential parent. Since a change in circumstances must exist before addressing the child's best interest and balancing the harm and advantages of a change in the child's environment, Wallace's second and third assignments of error are moot and will not be addressed. R.C. 3109.04(E)(1)(a); App.R. 12(A)(1)(c).

{¶34} Having found error in the particulars assigned and argued in Wallace's first assignment of error we reverse the trial court's judgment and remand the matter for further proceedings consistent with this opinion.

*Judgment Reversed*
*And Cause Remanded*

**WILLAMOWSKI, J., concurs.**

**/jlr**


**SHAW, J., DISSENTS**

{¶35} I respectfully dissent from the majority opinion in this case. The trial court explicitly addressed the change in circumstance issue in its opinion, which reads as follows:

> **Accordingly, the starting point for the Court is to determine whether or not Amber Herron has proven a change of circumstances as to William V and Seth. * * ***
>
> **In determining whether a change in circumstances has occurred as to Seth, the evidence is clear that Seth should continue to**

reside in the custody of his father. Despite his struggle with school conduct, Seth is a happy and healthy child. He is a good student, involved in school and community activities and has a good relationship with both parents, step-parents and siblings. There is no doubt that Seth's wishes, expressed to the guardian and the Court, to continue to reside with his father are self-determined. As such, Amber Herron has not succeeded in her burden (as to proving a change of circumstances) and no further analysis is necessary as it relates to Seth.

As to William V, the issue is more complex. Previously, William V expressed (to the court) no preference as to the parent with whom he wished to reside. However, that has changed and now William V is adamant on his wishes to reside with his mother. With his mother's recent relocation to Sidney, the guardian ad litem agrees with William V's wishes, and recommends modification. [Fn omitted]. But William V's wishes, alone, *do not* constitute a change of circumstances to warrant the modification. (See generally, *Moyer v. Moyer*, 1996 Ohio App. LEXIS 5762).

To this end the Court has examined the totality of the evidence and considers the following changes that have occurred and are now part of William V's everyday life:

- His mother has relocated to Sidney;
- He has a significant relationship with Levi and Roslyn, his half brother and sister;
- His mothers [sic] flexible work schedule is beneficial to their relationship
- Seth confirmed and supported William V's wishes; and
- William V's relationship with his mother is closer now than before.

These factors, together with William V's wishes (to reside with his mother) convince the Court that a change in circumstances regarding William V has occurred. Accordingly, Amber Herron has met her burden as to the issue of change of circumstances and further analysis regarding modification is necessary.

(Doc. 211).

**{¶36}** As the preceding excerpt of the trial court's judgment entry makes clear, the trial court plainly acknowledged that William's wishes alone were not sufficient to constitute a change in circumstances, which is why the trial court then went on to carefully consider and list all of the other factors, which taken together with William's wishes, convinced the court that a change of circumstances had occurred. In reaching this decision, the trial court conducted a full evidentiary hearing which included an interview of William *in camera*.[2]

**{¶37}** Nevertheless, despite the trial court being in the best position to evaluate the witnesses and weigh the evidence, the majority simply disregards the evidence cited by the trial court and effectively rules that a change in a parent's circumstance as a matter of law, does not qualify as a change in the child's circumstances even where the parent's new circumstances are found by the trial court to have directly altered the relationships of a child with his siblings or with that parent. There is no basis in law or in common sense for such a ruling.

**{¶38}** As stated by the majority, a change does not "have to be quantitatively large," it just "must have a material effect on the child." *McLaughlin v. McLaughlin-Breznenick*, 3d Dist. No. 8-06-06, 2007-Ohio-1087, ¶ 16, citing *In re Tolbert v. Mcdonald*, 3d Dist. No. 1-05-47, 2006-Ohio-2377, ¶ 31.

---

[2] The trial court was also familiar with the case and the parties through the original custody determination.

Individually, any single factor that the trial court cited might not have alone supported a finding of changed circumstances. However, when taken together the factors that the trial court did find to be persuasive are sufficient to establish that there was nothing arbitrary or unreasonable about the trial court's decision. It is not the role of this Court to substitute its judgment for the trial court simply because members of this Court might have made a different decision.

**{¶39}** For the foregoing reasons I would overrule the assignment of error presented, and address the remaining assignments of error.

/jlr