OPINION
{¶ 1} Defendant-Appellant, Candace McDonald appeals a judgment of the Allen County Court of Common Pleas, Juvenile Division, finding that the custody of the parties' daughter, Kilene, should be awarded to Plaintiff-Appellee, Travon Tolbert. On appeal, McDonald asserts that the trial court erred when it ordered that Tolbert should be Kilene's custodial parent. Finding that the trial court did not abuse its discretion when it determined that there was a change in circumstances under R.C.3109.04(E)(1)(a), we affirm the judgment of the trial court.
 {¶ 2} Tolbert and McDonald are the parents of Kilene McDonald. In August of 1999, the parties entered into an agreed judgment entry which designated McDonald the residential parent and legal custodian of Kilene. Additionally, Tolbert was granted visitation under Allen Co. Loc. R. 6.
 {¶ 3} In January of 2004, Tolbert moved for contempt and for a change of custody. The basis for Tolbert's motion was that McDonald had moved from Allen County; that McDonald's actions were not in the best interest of Kilene; that there was an ongoing issue of McDonald denying him visitation with Kilene; that there were changes in circumstances which justified a change in custody; and, that a change in custody would be in Kilene's best interests.
 {¶ 4} On July 6, 2004, Tolbert filed a second motion for contempt, because McDonald again had denied him visitation with Kilene. On July 7 and August 12, 2004, a trial was held.
 {¶ 5} In October of 2004, the magistrate found McDonald in contempt for failing to notify Tolbert and the Allen County Child Support Enforcement Agency of her change of address. Additionally, the magistrate found that McDonald was in contempt for failing to permit Tolbert to exercise his parental rights of visitation and companionship.
 {¶ 6} At trial, the following testimony was heard and facts adduced. McDonald testified that Tolbert was the father of Kilene and that Kilene was born on November 16, 1998. McDonald stated that she is single and currently lives in Dayton, Ohio with her four children, of which Kilene is the oldest. McDonald testified that Tolbert almost never saw Kilene during the first five years of her life. Tolbert admitted that he did not exercise his weekend visitation rights, because he lived in Columbus and worked third shift. McDonald testified that she allowed Tolbert's parents to have Kilene on weekends and on Tuesdays, even though there was no court-ordered grandparent visitation.
 {¶ 7} McDonald also testified that she obtained her Dayton address in August of 2003, but did not move there until December of 2003. McDonald also testified that when she moved to Dayton, she did not have a job, had no relatives there, and had no pediatrician for Kilene. Additionally, McDonald testified that she did not inform Tolbert of her new address, but that she did inform Tolbert's parents of her new address. Further, McDonald admitted that she moved to Dayton without filing a Notice of Intent to Relocate with the court as required under Allen Co. Loc. R. 18.
 {¶ 8} McDonald stated that during Memorial Day weekend of 2004, she had Kilene and had plans in Dayton on that Saturday and made arrangements with Tolbert for visitation the following weekend. McDonald admitted that she did not show at the visitation exchange point when promised and Tolbert received no visitation that weekend, because McDonald had car trouble.
 {¶ 9} Additionally, McDonald admitted that she has done nothing to facilitate visitation for the three months prior to the first day of the trial and that she had not been providing additional visitation to Tolbert since he filed his motions.
 {¶ 10} McDonald testified that while in Dayton, she has received services through Help Me Grow, and through this program, Kilene was enrolled in preschool.[1] Additionally, McDonald testified that she lives in a three bedroom house and works at the post office making ten dollars an hour. McDonald testified that she had a woman, who slept at her home and acted as her children's babysitter. McDonald testified in the second day of the hearing that she had fired this woman and was having a man, who she had only known since February of 2004, watch her children when she worked.
 {¶ 11} Additionally, McDonald testified that Calvin Payne, the father of one of her younger children, is a dangerous person and has physically assaulted her in the past. McDonald also testified that Payne had shoved her while she was holding one of her infant children and her other children were present. McDonald also testified that the father of her two younger children was a drug dealer.
 {¶ 12} Further, McDonald testified that she does not like Tolbert's family and referred to them as scum. McDonald admitted, on the record, that she did not file a Notice of Intent to Relocate, as was required by Allen Co. Loc. R. 18; that she did not give Tolbert her new address; and, that she failed to tell the Allen County Department of Job and Family Services of her change of address and change of employment.
 {¶ 13} McDonald denied that she willfully violated the court's visitation order, but she would not allow Tolbert to make up any lost visitation time. Also, McDonald testified that she has deliberately not wanted Tolbert to have Kilene because she claims that he has threatened to take Kilene away from her, yet she admitted that Tolbert has always returned Kilene to her. McDonald testified that she had failed to drop Kilene off for multiple scheduled visits.
 {¶ 14} Marilee Cox, an employee at the Montgomery County Educational Service Center, testified that she visits the McDonald home about three times a month. Cox testified that Kilene seems happy and is a well-dressed, well-groomed child. Cox also testified that when she visits the house it is always clean, food is available, and the house is both safe and secure. Additionally, Cox testified that she believes that McDonald is a good mother and was impressed with McDonald's ability to care for her children.
 {¶ 15} Tolbert testified that he is currently married and lives in Marysville, Ohio with his wife and two stepchildren. Additionally, Virginia Pierce of the Allen County Child Support Enforcement Agency, who is the financial worker for Tolbert, stated that Tolbert was current in his child support payments. Tolbert also testified that if he had custody, he would know that everything was being done properly with regards to visitation and following the rules.
 {¶ 16} Tolbert continued that he and his wife both work third shift, and during that time Tolbert's wife's mother watches their children. Tolbert's wife also testified that the couple lives in a four bedroom house in Marysville, Ohio.
 {¶ 17} The magistrate also made the following findings:
16. The defendant admits that she failed to notify the AllenCounty Department of Job Family Services (ACDJFS) of her changeof address within 10 days as required by Ohio Department of Job Family Services (ODJFS) regulations. The defendant's lease forthe apartment in Dayton commenced on September 1, 2003, and shetestified that she has livid (Sic.) there since December, 2003.The ACDJFS was unaware of defendant's move to Dayton until theyreceived a telephone call from a Montgomery County Department ofJob Family Services (MCDJFS) caseworker on February 26, 2004.
 17. The defendant was also required to advise the Departmentof Job Family Services of employment within 10 days. She didnot; the agency learned of her employment with the ChildDevelopment Center following a computer match using her socialsecurity number. The agency has not yet been advised of heremployment with the U.S. Postal Service.
* * *
21. The plaintiff-father did not have visitation with Kileneon Father's Day, 2004. When the defendant advised she had cartrouble, plaintiff offered to pick the child up and defendant'sresidence, to which defendant agreed. The defendant then calledback and voided this agreement and told plaintiff to meet her atthe customary exchange point. Plaintiff went to the appointedexchange point and defendant failed to appear with the child. Thedefendant has failed to appear at the designated exchange pointwhen expected at other times; when she does appear she is usuallylate.
 22. The defendant has told the plaintiff that he may not callher mother's residence to inquire about the child.
 23. The defendant refused to allow Kilene to attend herfather's (the plaintiff's) wedding.
* * *
25. In the past the defendant has frequently hung up on theplaintiff during their telephone conversations.
 26. At one time the defendant told the plaintiff that she hadto be present in the car if plaintiff wanted to take the childonto the highway.
(Magistrate's decision p. 4-7).
 {¶ 18} Further, the magistrate found that "many changes have occurred in the circumstances of the child and of the defendant since custody was last addressed in the 1999 order." (Magistrate's decision p. 8). These changes included that Kilene was "no longer an infant; rather she is a young girl attending grade school"; that the "defendant herself has moved with the child and obtained employment"; and, that "[t]he defendant is raising 2 (Sic.) younger half-siblings of Kilene." (Magistrate's decision pp. 8 9). Based on these changes, the magistrate found that the required change of circumstances for a change of custody had been met. Also, the magistrate found that it would be in Kilene's best interest that Tolbert be granted custody of her. Finally, the magistrate found that "[a]ny potential harm to Kilene is clearly outweighed by the great many advantages of living with the plaintiff in this environment." (Magistrate's decision pp. 9 10). Accordingly, the magistrate granted Tolbert's motion for change of custody and designated Tolbert as the residential parent and legal custodian of Kilene.
 {¶ 19} In June of 2005, the trial court adopted the magistrate's decision. In doing so, the trial court found that McDonald should be held in contempt for both allegations. Additionally, the trial court found that Tolbert should be designated as the residential parent and legal custodian of Kilene.
 {¶ 20} It is from this judgment McDonald appeals, presenting the following assignment of error for our review:
THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION WHEN ITORDERED THAT TRAVON SHOULD BE THE CUSTODIAL PARENT.
 {¶ 21} In her assignment of error, McDonald asserts that the trial court abused its discretion when it designated Tolbert residential parent and legal custodian of Kilene. Specifically, McDonald argues that there was not enough evidence to allow the trial court to conclude that a change of circumstances had occurred. We disagree.
 {¶ 22} "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." Bechtol v. Bechtol (1990),49 Ohio St.3d 21, syllabus; see Davis v. Flickinger,77 Ohio St.3d 415, 418, 1997-Ohio-260. Furthermore, a reviewing court should afford the utmost deference to a trial court's decision regarding child custody matters. Miller v. Miller (1988),37 Ohio St.3d 71, 74. Accordingly, absent an abuse of discretion, a reviewing court will not reverse a trial court's decision regarding child custody. Masters v. Masters, 69 Ohio St.3d 83, 85, 1994-Ohio-483; see e.g., Bechtol, 49 Ohio St.3d 21. A finding of abuse of discretion requires evidence that the decision of the trial judge was unreasonable, arbitrary, or unconscionable.State ex rel. Leigh v. State Emp. Relations Bd.76 Ohio St.3d 143, 144, 1996-Ohio-416; State ex rel. Blenders v. Hall (1995),71 Ohio St.3d 632, 637, 1995-Ohio-106.
 {¶ 23} When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. As the Ohio Supreme Court stated in Seasons Coal Co., Inc.v. City of Cleveland (1984), 10 Ohio St.3d 77, 80:
The underlying rationale of giving deference to the findingsof the trial court rests with the knowledge that the trial judgeis best able to view the witnesses and observe their demeanor,gestures and voice inflections, and use these observations inweighing the credibility of the proffered testimony.
Additionally, the Ohio Supreme Court stated that deferring to the trial court on matters of credibility is "even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis, 77 Ohio St.3d at 419 (emphasis in original).
 {¶ 24} While a trial court's discretion in a custody modification proceeding is broad, it is not absolute. Wangugi v.Wangugi (Apr. 12, 2000), 4th Dist. No. 99 CA 2531. The trial court must follow the procedure outlined in R.C. 3109.04.Miller, 37 Ohio St.3d at 74.
 {¶ 25} R.C. 3109.04(E) governs the power of a trial court to modify a prior decree allocating parental rights and responsibilities for the care of children. R.C. 3109.04(E)(1)(a) provides:
The court shall not modify a prior decree allocating parentalrights and responsibilities for the care of children unless itfinds, based on facts that have arisen since the prior decree orthat were unknown to the court at the time of the prior decree,that a change has occurred in the circumstances of the child, thechild's residential parent, or either of the parents subject to ashared parenting decree, and that the modification is necessaryto serve the best interest of the child. In applying thesestandards, the court shall retain the residential parentdesignated by the prior decree or the prior shared parentingdecree, unless a modification is in the best interest of thechild and one of the following applies:
 (i) The residential parent agrees to a change in theresidential parent or both parents under a shared parentingdecree agree to a change in the designation of residentialparent.
 (ii) The child, with the consent of the residential parent orof both parents under a shared parenting decree, has beenintegrated into the family of the person seeking to become theresidential parent.
 (iii) The harm likely to be caused by a change of environmentis outweighed by the advantages of the change of environment tothe child.
 {¶ 26} In Davis, the Ohio Supreme Court discussed the requirement of a "change in circumstances" and reinforced that an appellate court must not disturb the trial court's findings absent an abuse of discretion. Specifically, the Davis Court stated:
R.C. 3109.04 requires a finding of a `change incircumstances.' Such a determination when made by a trial judgeshould not be disturbed absent an abuse of discretion. Indetermining whether a change in circumstances has occurred so asto warrant a change in custody, a trial judge, as the trier offact, must be given wide latitude to consider all issues whichsupport such a change, including a change in circumstancesbecause of a child's age and consequent needs, as well asincreased hostility by one parent (and that parent's spouse)which frustrates cooperation between the parties on visitationissues.
 77 Ohio St.3d at 416-17. The Davis Court continued:
Clearly, there must be a change of circumstances to warrant achange of custody, and the change must be of substance, not aslight or inconsequential change. The nomenclature is not thekey. As the Wyss court aptly stated:
 `The clear intent of that statute is to spare children from aconstant tug of war between their parents who would file a motionfor change of custody each time the parent out of custody thoughthe or she could provide the children a `better' environment. Thestatute is an attempt to provide some stability to the custodialstatus of the children, even though the parent out of custody maybe able to prove that he or she can provide a betterenvironment.' Wyss [v. Wyss (1982)], 3 Ohio App.3d[412,] 416.
 In determining whether a `change' has occurred, we are mindfulthat custody issues are some of the most difficult and agonizingdecisions a trial judge must make. Therefore, a trial judge musthave wide latitude in considering all the evidence before him orher * * * and such a decision must not be reversed absent anabuse of discretion.
 Davis, 77 Ohio St.3d at 418.
 {¶ 27} Once a change in circumstances has been demonstrated, the trial court next must consider whether the modification would serve the child's best interests. R.C. 3109.04(F)(1) specifies the factors that the trial court should consider when determining the child's best interests. R.C. 3109.04(F)(1) provides:
In determining the best interest of a child pursuant to thissection, whether on an original decree allocating parental rightsand responsibilities for the care of children or a modificationof a decree allocating those rights and responsibilities, thecourt shall consider all relevant factors, including, but notlimited to:
 (a) The wishes of the child's parents regarding the child'scare;
 (b) If the court has interviewed the child in chamberspursuant to division (B) of this section regarding the child'swishes and concerns as to the allocation of parental rights andresponsibilities concerning the child, the wishes and concerns ofthe child, as expressed to the court;
 (c) The child's interaction and interrelationship with thechild's parents, siblings, and any other person who maysignificantly affect the child's best interest;
 (d) The child's adjustment to the child's home, school, andcommunity;
 (e) The mental and physical health of all persons involved inthe situation;
 (f) The parent more likely to honor and facilitatecourt-approved parenting time rights or visitation andcompanionship rights;
 (g) Whether either parent has failed to make all child supportpayments, including all arrearages, that are required of thatparent pursuant to a child support order under which that parentis an obligor;
 (h) Whether either parent previously has been convicted of orpleaded guilty to any criminal offense involving any act thatresulted in a child being an abused child or a neglected child;whether either parent, in a case in which a child has beenadjudicated an abused child or a neglected child, previously hasbeen determined to be the perpetrator of the abusive orneglectful act that is the basis of an adjudication; whethereither parent previously has been convicted of or pleaded guiltyto a violation of section 2919.25 of the Revised Code involving avictim who at the time of the commission of the offense was amember of the family or household that is the subject of thecurrent proceeding; whether either parent previously has beenconvicted of or pleaded guilty to any offense involving a victimwho at the time of the commission of the offense was a member ofthe family or household that is the subject of the currentproceeding and caused physical harm to the victim in thecommission of the offense; and whether there is reason to believethat either parent has acted in a manner resulting in a childbeing an abused child or a neglected child;
 (i) Whether the residential parent or one of the parentssubject to a shared parenting decree has continuously andwillfully denied the other parent's right to parenting time inaccordance with an order of the court;
 (j) Whether either parent has established a residence, or isplanning to establish a residence, outside this state.
 {¶ 28} If the trial court concludes that a change in circumstances has occurred and that the child's best interests would be served by a modification of custody, the trial court may not modify the custody order unless the trial court determines that the harm likely to be caused by a change of environment is outweighed by the benefits of the change of environment.[2]
R.C. 3109.04(E)(1)(a)(iii).
 {¶ 29} We initially note that this Court has provided three different ways to interpret the requirement of a "change of circumstances" under R.C. 3109.04(E)(1)(a). In Thatcher v.Thatcher (Oct. 6, 1997), 3d Dist. No. 10-97-08, this Court properly re-stated the Ohio Supreme Court's interpretation that in order "[t]o modify custody, there must be a change of circumstances, `and the change must be a change of substance,
not a slight or inconsequential change.'" Id. quoting Davis,77 Ohio St.3d at 418 (emphasis added).[3] Additionally, this Court has stated the Ohio Supreme Court's interpretation of what constitutes a change in circumstances in two other ways. InStout v. Stout, 3d Dist. No. 14-01-10, 2001-Ohio-2293, this Court stated that "the change must be substantial, not slight or inconsequential." (Emphasis added). The use of "substantial" rather than "change of substance" is also found in Warnecke v.Warnecke, 3d Dist. No. 12-01-05, 2002-Ohio-1420, at ¶ 9 andDuer v. Moonshower, 3d Dist. No. 15-03-15, 2004-Ohio-4025, at ¶ 12. Further, this Court has utilized a third interpretation. InRodriguez v. Rodriguez, 3d Dist. No. 5-99-11, 1999-Ohio-854, this Court stated "[a] change in circumstances does not have to be substantial, it only needs to be substantiated by theevidence." (Emphasis added).
 {¶ 30} In light of our conflicting interpretations, we will specifically adopt the interpretation by the Ohio Supreme Court in Davis, which has been adopted in the great majority of our opinions. In doing so, we want to ensure that we comply with the concerns the Davis Court raised. First, we note that theDavis Court stated that "[l]ower courts have varied widely in their interpretation of the meaning of `change of circumstances,' some requiring the change to be `substantial.'"77 Ohio St.3d at 417, citing Perz v. Perz (1993), 85 Ohio App.3d 374. TheDavis Court continued that "R.C. 3109.04 requires only a finding of a `change in circumstances' before a trial court can determine the best interest of the child in considering a change of custody. Nowhere in this statute does the word `substantial' appear." 77 Ohio St.3d at 417. The Davis Court also noted that the use of "substantial" in conjunction with "change" in the court of appeals opinion gave the appearance that the court of appeals "require[d] a higher burden of proof than required by statute." Id. at 417-18. Further, the Davis Court concluded, "With respect to the review by the appellate court, the majority below reversed the trial judge because it did not find a `substantial' change in circumstances, when in reality, it merely substituted its judgment for the trial court's." Id. at 420. Finally, the Davis Court stated, "While we do not want to subject children to a tug-of-war between two parents continually attempting to gain custody, we must not make the threshold for change so high as to prevent a trial judge from modifying custody if the court finds it is necessary for the best interest of the child." Id. at 420-21.
 {¶ 31} Accordingly, in order to have the requisite change of circumstances under R.C. 3109.04(E)(1), "the change must be a change of substance, not a slight or inconsequential change." Id. at 418. "Thus, the change does not have to be quantitatively large, but rather, must have a material effect on the child."Green v. Green, 3d Dist. No. 14-03-29, 2004-Ohio-185, at ¶ 7; see Davis, 77 Ohio St.3d at 417 ("Chief Justice Moyer, while on the Tenth District Appellate Court, stated: `The changed conditions, we stress, must be substantiated, continuing, and have a materially adverse effect upon the child. The latter is the paramount issue.'") citing Wyss v. Wyss (1982),3 Ohio App.3d 412, 416, quoting Wedren v. Wedren (Aug. 27, 1974), 10th Dist. No. 74AP-103.
 {¶ 32} Turning to the case sub judice, the magistrate stated that three specific changes had occurred since Kilene's custody had been last addressed, which the trial court adopted. Specifically, the magistrate found that Kilene was "no longer an infant; rather she is a young girl attending grade school"; that the "defendant herself has moved with the child and obtained employment"; and, that "[t]he defendant is raising 2 (sic.) younger half-siblings of Kilene."[4] (Magistrate's decision pp. 8 9). While none of these changes viewed independently would necessarily constitute a change as contemplated under R.C.3109.04(E)(1)(a), when viewed collectively, we find that the trial court did not abuse its discretion when it found that a requisite change of circumstances had occurred under R.C.3109.04(E)(1) and granted Tolbert custody of Kilene. Nevertheless, we will consider each finding separately.
 {¶ 33} In Davis, the Ohio Supreme Court stated that a trial court "could consider the change in circumstances created by the maturing of the child." 77 Ohio St.3d at 420. However, theDavis Court stated that "age alone is not a sufficient factor." Id., citing Perz v. Perz (1993), 85 Ohio App.3d 374, 374. Here, the custody arrangement was created when Kilene was not old enough to attend school. Even though the maturing of a child, standing alone, may not necessarily be a determinative issue, the magistrate correctly recognized that it was one factor to be considered in deciding whether a change of circumstances occurred under R.C. 3109.04(E)(1)(a).
 {¶ 34} In Patton v. Patton, 141 Ohio App.3d 691,2001-Ohio-2117, this Court affirmed the trial court's denial of the appellant's motion for a reallocation of parental rights and responsibilities and the trial court's granting of the appellee's motion for a modification of parental rights and responsibilities. In Patton, the appellee was the residential parent and legal custodian of the parties' daughter at the time of the hearing. Id. at 695. Additionally, the appellant had moved from Lancaster, Ohio to Blissfield, Michigan. Id. This Court stated, "The trial court correctly recognized that the relocation of the appellant alone was not a determinative issue; rather it was a single factor to consider in deciding * * * the change of circumstance issue pursuant to R.C. 3109.04(E)(1)(a) * * *." Id. at 695-96. Even though McDonald's relocation from Lima, Ohio to Dayton, Ohio, standing alone, may not necessarily be a determinative issue, the magistrate correctly recognized that it was another factor to be considered in deciding whether a change of circumstances occurred under R.C. 3109.04(E)(1)(a).
 {¶ 35} In Carter v. Carter, 3d Dist. No. 16-99-02, 1999-Ohio-904, this Court found that when, among other things, the appellant moved with her children from her parents' residence to an apartment and had borne another child, who's father she divorced, the trial court did not abuse its discretion when it found a change of circumstances under R.C. 3109.03(E)(1)(a). Specifically, this Court found that "Although any one of those factors, by itself, might not suffice to constitute a change of circumstances under which modification of custody may be considered, the cumulative impact of those factors supports a finding of a change of circumstances * * *." Id. Even though the birth of additional children since the last decree, standing alone, may not necessarily be a determinative issue, the magistrate correctly recognized that it was another factor to be considered in deciding whether a change of circumstances occurred under R.C. 3109.04(E)(1)(a).
 {¶ 36} Accordingly, this Court finds that the trial court did not abuse its discretion when it determined that there was a change in circumstances under R.C. 3109.04(E)(1)(a). While none of these changes viewed independently would necessarily be sufficient to constitute a change of substance as contemplated under R.C. 3109.04(E)(1)(a), when viewed collectively, it is clear that a change of substance has occurred. Furthermore, we find that there is substantial competent, credible evidence to support a finding that modification was necessary to serve the best interest of Kilene and that the harm that would result from the change of custody would be outweighed by the benefit from the result of the change. Accordingly, McDonald's assignment of error is overruled.
 {¶ 37} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 Shaw, J., concurs.
 Bryant, P.J., concurs in judgment only.
[1] The school term Kilene was enrolled in began after the hearing.
[2] We note that R.C. 3109.04(E)(1)(a) requires that the trial court make, in addition to a change in circumstances and best interest of the child findings, one of three enumerated findings. Since R.C. 3109.04(E)(1)(a)(iii) is the only finding the magistrate and trial court made, we will not consider or address the others.
[3] The following decisions also properly re-state the standard in Davis: Livermore v. Livermore, 3d Dist. No. 3-05-17,2006-Ohio-485, at ¶ 9, Font v. Morris, 3d Dist. No. 10-03-21,2004-Ohio-2354, at ¶ 11, Green v. Green, 3d Dist. No. 14-03-29,2004-Ohio-185, at ¶ 7, Feasel v. Stetler, 3d Dist. No. 15-2000-18, 2001 Ohio-2225, Heitkamp v. Heitkamp, 3d Dist. No. 10-01-03, 2001-Ohio-2131, Marshall v. Marshall, 3d Dist. No. 1-99-81, 2000-Ohio-1647, Bibb v. Bibb, 3d Dist. No. 13-99-07, 1999-Ohio-856, Carter v. Carter, 3d Dist. No. 16-99-02, 1999-Ohio-904, Lashlee v. Dean (Dec. 11, 1998), 3d Dist. No. 1-98-44, Marshall v. Marshall (Sept. 8, 1998), 3d Dist. No. 97 10 0067, Clark v. Smith (1998), 130 Ohio App.3d 648, 654,Musson v. Musson (June 10, 1998), 3d Dist. No. 6-98-01, Eachesv. Eaches (July 3, 1997), 3d Dist. No. 89-7-05.
[4] As noted above, McDonald admitted that she had done nothing to facilitate visitation between Tolbert and Kilene in the three months prior to the first day of the trial. Additionally, the magistrate found that McDonald had told Tolbert that he may not call her mother's residence to inquire about Kilene and that McDonald refused to allow Kilene to attend Tolbert's wedding. We note that the increased hostility between the parents and the frustration of visitation are factors which can support a finding of a change in circumstances. Davis, 77 Ohio St.3d at 416-17. See also Beekman v. Beekman (1994), 96 Ohio App.3d 783, 789;Holm v. Smilowitz (1992), 83 Ohio App.3d 757, 773.