[Cite as *Eatherton v. Behringer*, 2012-Ohio-5229.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

DEE ANN EATHERTON,

    PLAINTIFF-APPELLANT,                 CASE NO. 13-12-23

    v.

JOEL DEAN BEHRINGER,               O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Seneca County Common Pleas Court
Juvenile Division
Trial Court No. 20470086

**Judgment Affirmed**

Date of Decision: November 13, 2012

APPEARANCES:

    *Bret A. Spaeth* for Appellant

    *Karen Behm* for Appellee

**SHAW, P.J.**

{¶1} Plaintiff-appellant, Dee Ann Eatherton ("Ann"), appeals the April 11, 2012 judgment of the Seneca County Court of Common Pleas, Juvenile Division, designating defendant-appellee, Joel Dean Behringer ("Joel"), as residential parent of their child.

{¶2} In July of 2003, the parties, who never married, had a child together named Adam Andrew Eatherton-Behringer.

{¶3} On July 9, 2004, Ann filed a complaint requesting the trial court issue an order legally establishing a parent-child relationship between Joel and Adam, and also requesting that Ann be designated as Adam's residential parent. Joel subsequently filed an answer.

{¶4} On March 9, 2005, Joel filed a "Motion to be Named Residential and Custodial Parent," requesting the trial court to designate him as Adam's residential parent.

{¶5} On August 26, 2005, the trial court issued a consent judgment entry journalizing the parties' agreement that Ann will be designated as Adam's residential parent; that Joel shall have visitation with Adam on Tuesday evenings each week from 6:00 p.m. to 9:00 p.m. (hereinafter "midweek visitation"), and that his visitation schedule shall follow the local rules, which included every other weekend and three weeks in the summer. The parties also agreed that if Ann does

not permit Joel to exercise his visitation with Adam, Joel shall be allowed to choose the date to makeup his visitation.

{¶6} On October 10, 2006, Joel filed a "Motion for Pick-up and Drop-off for Visitation," requesting the trial court to order the parties to utilize PatchWorks House as a neutral site for visitation exchanges.

{¶7} On January 11, 2007, the trial court issued a consent judgment entry journalizing the parties' agreement that Joel shall pick-up Adam from daycare after work between 5:30 p.m. and 6:00 p.m. for his midweek visitation, and that the exchange point for his other court-ordered visitations shall be PatchWorks House. The parties also agreed to abide by the hours of PatchWorks House and modify the exchange times to allow PatchWorks House to facilitate the custody exchange.

{¶8} On January 8, 2008, Joel filed a motion for contempt alleging that Ann denied him visitation with Adam on two of his scheduled days, one of those days being Christmas Eve, by refusing to deliver Adam to PatchWorks House to effectuate the custody exchange.

{¶9} On March 4, 2008, Joel filed a second motion for contempt claiming that Ann had impeded and restricted his communication with Adam in violation of the court's previous order by disconnecting her telephone and refusing to give Joel her new telephone number so that he could communicate with Adam.

{¶10} On May 22, 2008, Ann filed a motion to modify custody requesting a modification of her parenting time during the summer. The same day Ann also filed a motion for contempt alleging that on December 16, 2007, Joel interfered with her parenting time by: failing to deliver Adam to the exchange location until the next morning;[1] restricting her communication with Adam; criticizing her in front of Adam; and failing to comply with other provisions in the prior court order.

{¶11} On June 20, 2008, Joel filed a third and a fourth motion for contempt alleging Ann interfered with Joel picking-up Adam from daycare after work at 5:30 p.m. as stated in the court order. Specifically, Joel alleged that Ann consistently picked-up Adam from daycare at 5:00 p.m. and then refused to release Adam to Joel until *her* watch indicated that it was exactly 5:30 p.m. and not a minute sooner. In addition, Joel also claimed that when he arrived at the daycare on June 10, 2008, Ann had already picked-up Adam and the daycare supervisor was waiting to speak with Joel. The daycare supervisor explained to Joel that Ann arranged for herself to be the only parent of record at the daycare and consequently Joel was not authorized to pick-up Adam from daycare or able to view Adam's file. Joel alleged that Ann also registered Adam at daycare as Adam Eatherton and not under his name as it appears on his birth certificate and the court

---

[1] It was later revealed at an evidentiary hearing that on the date in question Seneca County experienced a level three snow emergency which required PatchWorks House to close thereby preventing Joel from delivering Adam to the exchange point until the next morning. Ann claimed that Joel should have delivered Adam to the Fostoria Police Department that night when the level three emergency was lifted. During this time, Ann made seventeen phone calls to Joel between the evening of December 16, 2007 and the early morning hours of December 17, 2007.

order, Adam Eatherton-Behringer. Joel also claimed that on this day Ann was waiting outside the daycare with Adam and proceeded to follow him to his car while harassing him and recording the conversation with a tape recorder.

{¶12} On July 15, 2008, Ann filed a second motion for contempt claiming Joel violated the court order by keeping Adam past the July 4th holiday because PatchWorks House was closed and unable to facilitate the exchange until July 6th. On the same day, Ann also filed several other motions requesting the trial court to prohibit Joel from interfering with her telephone calls to Adam; to modify parenting time—specifically requesting the neutral point of custodial exchange be moved to the Fostoria Police Department, and alleging that Joel's midweek visitations with Adam are no longer in Adam's best interest; to modify child support; and to require Joel to make certain administrative changes to Adam's health care plan.

{¶13} On November 19, 2008, after two evidentiary hearings, the magistrate ruled in a forty-three-page decision on the eleven pending motions between the parties. In this decision, the magistrate overruled both of Ann's motions for contempt finding that Ann failed to present evidence to substantiate her claims that Joel violated the court order. The magistrate admonished both parties for failing to abide by court order requiring each parent not to restrict or impede the other's communication with Adam. The magistrate granted Ann's

request to modify her summer parenting time to allow her to have one particular week of vacation time with Adam, and denied her motion to modify child support. The magistrate further noted that "all motions made by [Ann] regarding parenting time between [Joel] and the child are to limit or take time away from [Joel]. Her actions show that she wants to keep limiting [Joel's] time." (Dec. Nov. 19, 2008 at 32).

{¶14} In addition, the magistrate granted Joel's first, second, and third motions for contempt, finding the evidence demonstrated that Ann had "willfully" interfered with his visitation on each occasion alleged in the motions. The magistrate also granted Joel's fourth motion for contempt in part, finding that Ann interfered with Joel's visitation as alleged, but also overruled the motion in part, finding Joel's allegations of Ann's harassment were unsupported by the evidence. The magistrate sentenced Ann to ten days in jail for each finding of contempt to be served consecutively, but suspended the sentence provided that Ann adhere to specific conditions which remedied her past instances of interference with Joel's parenting time. Ann was also given the opportunity to purge the contempt by paying a fine of $500.00 for each finding of contempt.

{¶15} Other than modifying Ann's summer vacation time with Adam, no significant changes were made to the prior custody decree. However, the magistrate ordered Ann to leave the daycare parking lot by 5:15 p.m. on the days

of Joel's midweek visitation to avoid interfering with Joel's parenting time. The magistrate also found that "both parents need to grow up, learn to communicate civilly to each other about their child, to put his well being before their needs and wants. But the undersigned finds that neither has shown enough maturity for this to happen therefore, exchanges should continue at PatchWorks House, all communication shall be in writing through PatchWorks House and that each will have to continue to flex the parenting schedule to accommodate the availability of PatchWorks House." (Dec. Nov. 19, 2008 at 35).

{¶16} On December 15, 2008, after an independent review, the trial court adopted and approved the magistrate's decision without objections from the parties.

{¶17} In January and February of 2009, the trial court issued judgment entries journalizing that Ann had purged herself of all four findings of contempt.

{¶18} On March 31, 2009, Joel filed two more motions for contempt alleging that Ann continuously impeded and restricted his ability to communicate with Adam by refusing to answer the telephone when he called and by not allowing Adam to speak to Joel for any significant period of time. Joel also alleged that Ann denied him visitation with Adam during his scheduled parenting time pursuant to the prior custody decree. The same day, Joel also filed a "Motion for Reallocation of Parental Rights and Responsibilities," requesting the trial court

designate him as Adam's residential parent and a motion to appoint a Guardian ad Litem (hereinafter "GAL").

{¶19} On April 1, 2009, the trial court granted Joel's motion to appoint a GAL to represent Adam's interests in the case.

{¶20} On June 18, 2009, the trial court issued a consent judgment entry journalizing the parties' agreement to participate in a full custody evaluation with Dr. Thomas Hustak and further ordering that "[e]ach party shall comply with any and all requests of Dr. Hustak."  (JE June 18, 2009 at 1).

{¶21} On September 25, 2009, after an evidentiary hearing, the magistrate issued a decision stating the evidence supported finding Ann in contempt for preventing Joel from exercising his scheduled visitation without justification, and for not permitting Joel to make-up his missed parenting time as required by the prior custody decree.  The magistrate sentenced Ann to fifteen days in jail on each finding of contempt but suspended the sentence provided that she abide by certain conditions which included following the court orders requiring the parties to facilitate telephone communication between Adam and the other parent, and permitting Joel to make-up the parenting time he missed as a result of Ann's interference.  The magistrate also gave Ann an opportunity to purge the contempt by paying a fine of $750.00 for each finding of contempt.  The trial court subsequently approved and adopted the magistrate's decision.

{¶22} On December 4, 2009, the trial court issued a judgment entry journalizing that Ann purged the contempt.

{¶23} On December 7, 2009, Dr. Hustak filed his custody evaluation report with the court.

{¶24} On March 9, 2010, Ann filed a motion for shared parenting and a proposed shared parenting plan.

{¶25} On March 11, 2010, the GAL filed her report and recommendations with the trial court. In her report, the GAL observed on one of the home visits six-year-old Adam stating in a sing-song voice, "my dad is mean; my dad is mean." The GAL also recounted an incident at the daycare in which the children were drawing pictures of their families and Adam stated, "my dad is evil; my dad is the devil." The GAL further discussed her conversation with Ann's ex-husband, the father of her two adult children, who claimed that Ann refused to allow him to see his children, returned the gifts he left for them, and eventually changed their last name to her maiden name, Eatherton. Based on her observations, the GAL recommended "Adam Andrew be placed in the residential custody of father, Joel, because Adam needs a positive role model as opposed to mother's negative role model." (GAL's Report and Recommendations at 7).

{¶26} On March 18 and 19, 2010, the magistrate held a hearing on Joel's motion for reallocation of parental rights and responsibilities filed on March 31,

2009, and Ann's motion for shared parenting filed on March 9, 2010. The hearing was continued to June 10, 2010, because the two days scheduled for the hearing were insufficient to address the voluminous amount of evidence the parties intended on introducing. In the interim, the magistrate issued temporary orders, which included an order requiring Ann to "immediately enroll in counseling and psychotherapy to address her negative shaping behaviors that could contribute to parental alienation syndrome as recommended by the child custody evaluation submitted to the Court." (Dec. Mar. 23, 2010 at 2).

{¶27} On June 3, 2010, the GAL filed a supplemental report in which she recommended the parties follow a shared parenting plan designating both parties as the residential parent when exercising his or her parenting time, and that Joel be named residential parent for school placement purposes.

{¶28} On July 19, 2010, the magistrate issued her decision, recommending that the trial court designate Joel as Adam's residential parent and that Ann be given visitation. Later that month, Ann filed her objections to the magistrate's decision.

{¶29} On February 4, 2011, after granting the parties several extensions of time to brief the issues raised in Ann's objections, the trial court filed a judgment entry overruling each of Ann's objections. Ann appealed the judgment entry to

this Court, which remanded the matter to the trial court with instructions to issue a judgment entry in compliance with Civ.R. 53(D)(3)(e).

{¶30} On March 22, 2011, the trial court, pursuant to this Court's ruling, filed its judgment entry, comporting with the requirements set forth in Civ.R. 53(D)(3)(e).   The same day the trial court issued a separate judgment entry granting Joel's motion for a temporary restraining order against Ann preventing her from attempting to or threatening to remove Adam from "his school, daycare or [Joel's home] or from calling the school or police to do so."   (JE, March 22, 2011 at 1).  The trial court also ordered that Joel shall be named Adam's custodial parent as set forth in the July 19, 2010 Magistrate's Decision and February 4, 2011 Judgment Entry.

{¶31} Ann appealed the March 22, 2011 judgment entry granting Joel's motion to designate him as Adam's residential parent.   The appeal was subsequently stayed by Ann filing a petition for bankruptcy.  On February 22, 2012, the bankruptcy automatic stay was lifted.

{¶32} On April 10, 2012, this Court reversed the decision of the trial court, which adopted the magistrate's decision, concluding that the magistrate failed to independently determine whether there had been a change in circumstances as required by R.C. 3109.04(E)(a)(1).  *See Eatherton v. Behringer I*, 3rd Dist. No. 13-11-12, 2012-Ohio-1584, ¶ 15.

{¶33} On April 11, 2012, the trial court issued a "Journal Entry on Remand," independently finding that a change in circumstances had occurred since the prior custody decree and adopting and incorporating the conclusions in magistrate's decision regarding the remaining considerations under R.C. 3109.04(E)(1)(a).

{¶34} It is from this judgment Ann appeals, presenting the following assignments of error for our review.

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THERE TO BE A CHANGE IN CIRCUMSTANCES.**

### ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED IN FINDING THAT A MODIFICATION IS NECESSARY TO SERVE THE BEST INTEREST OF THE PARTIES' MINOR CHILD, AND THAT THE HARM LIKELY TO BE CAUSED BY A CHANGE OF ENVIRONMENT IS OUTWEIGHED BY THE ADVANTAGES OF THE CHANGE OF ENVIRONMENT TO THE CHILD.**

### ASSIGNMENT OF ERROR NO. III

**THE TRIAL ERRED IN FINDING THAT MOTHER/APPELLANT HAS INTERFERED WITH FATHER/APPELLEE'S PARENTING TIME.**

### ASSIGNMENT OF ERROR NO. IV

**THE TRIAL COURT ERRED BY CONSIDERING EVIDENCE OUTSIDE THE RECORD, SPECIFICALLY,**

**EVIDENCE OF MOTHER/APPELLANT'S PHONE CALL MESSAGES PRESENTED AT A PRIOR HEARING.**

**ASSIGNMENT OF ERROR NO. V**

**THE TRIAL COURT ERRED IN CONSIDERING MOTHER'S STRAINED RELATIONSHIP WITH HER OWN FATHER AS EVIDENCE.**

**ASSIGNMENT OF ERROR NO. VI**

**THE TRIAL COURT ERRED BY FINDING THAT MOTHER/APPELLANT FAILED TO COMPLETE HER COUNSELING PROGRAM.**

**ASSIGNMENT OF ERROR NO. VII**

**THE TRIAL COURT ERRED BY FAILING TO FOLLOW DR. HUSTAK'S RECOMMENDATION FOR SHARED PARENTING.**

{¶35} Due to the nature of the assignments of error, we elect to address some of them together and out of order.

*First Assignment of Error*

{¶36} In her first assignment of error, Ann contends that the trial court erred in finding that a change in circumstances had occurred since the prior custody decree, which warranted the consideration of whether a modification of that decree is in Adam's best interest.

{¶37} Initially, we observe that child custody determinations are some of the most difficult and agonizing decisions a trial court must make. Therefore, a trial court must have wide latitude in its consideration of the evidence. *Davis v.*

-13-

*Flickinger*, 77 Ohio St.3d 415 (1997). Generally, when reviewing a ruling pertaining to the allocation of parental rights, the trial court is to be afforded great deference. *Miller v. Miller*, 37 Ohio St.3d 71 (1988). Thus, we will not reverse a child custody decision that is supported by a substantial amount of competent, credible evidence absent an abuse of discretion. *Bechtol v. Bechtol*, 49 Ohio St.3d 21, syllabus (1990). The term "abuse of discretion" connotes more than an error of judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶38} At the outset, we note that Ann also claims the trial court failed to conduct a de novo review of the magistrate's decision regarding its change in circumstance determination. However, we conclude the record supports finding that the trial court conducted the appropriate review and thus we find no error on this basis.

{¶39} Section 3109.04(E)(1)(a) of the Revised Code authorizes a trial court to modify or terminate a prior decree allocating parental rights and responsibilities. The statute outlines the elements that the trial court must consider in its determination of whether a modification of the prior decree is warranted. Specifically, R.C. 3109.04(E)(1)(a) states the following regarding a modification of a prior custody decree:

> **The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds,**

> **based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:**
>
> **(i)   The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.**
>
> **(ii)   The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.**
>
> **(iii)  The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.**

R.C. 3109.04(E)(1)(a).   When a court is asked to modify a custody decree, the initial determination to be made by the trial court is whether there has been a change in circumstances of the child or the residential parent since the prior court order.   *Wyss v. Wyss*, 3 Ohio App.3d 412, 414 (1982).   This finding should be made prior to weighing the child's best interest.   The purpose of requiring a finding of a change in circumstances is to prevent a constant relitigation of issues that have already been determined by the trial court.   *Clyborn v. Clyborn*, 93 Ohio App.3d 192, 196 (1994).

{¶40} In reviewing whether the evidence presented in this case demonstrates that a change in circumstances occurred, we are reminded that the change must be of substance, not slight or inconsequential. *Flickinger*, 77 Ohio St.3d at 415. In addition, R.C. 3109.04(E)(1)(a) does not require that the change be "substantial," nor does "the change * * * have to be quantitatively large, but rather, must have a material effect on the child." *McLaughlin v. McLaughlin– Breznenick*, 3d Dist. No. 8–06–06, 2007-Ohio-1087, ¶ 16, citing *Tolbert v. McDonald*, 3d Dist. No. 1–05–47, 2006-Ohio-2377, ¶ 31.

{¶41} Here, the trial court identified the change in circumstances as Ann's failure to facilitate Joel's parenting time as required by the prior custody decree. Specifically, the trial court noted that "testimony was presented concerning at least six contempt proceedings since the last Judgment Entry to support the claim that the residential parent [Ann] was not fostering the parent-child relationship of the non-residential parent [Joel]." (JE, April 11, 2012 at 3). As previously discussed, the record demonstrates that Ann was found in contempt based on six separate instances in which her actions interfered with and hindered Joel's parenting time with Adam in violation of the prior custody decree.

{¶42} This Court has previously held that a custodial parent's interference with visitation by a noncustodial parent may be considered a 'change of circumstances' which would allow for a modification of custody. *Long v. Long*, 3d

Dist. No. 14-10-01, 2010-Ohio-4817, ¶ 30; *see*, *also Bland v. Bland,* 9th Dist. No. 21228, 2003-Ohio-828, ¶ 65 (finding that the mother's continuous interruption with the father's visitation and companionship with the children was a change in circumstances); *Headley v. Headley*, 11th Dist. No. 99-A-0049, *5 (Sept. 29, 2000) (holding that the requisite change was demonstrated by the mother's hostile and controlling behavior that interfered with the father's visitation rights).

**{¶43}** In addition, a change in circumstances can also include a breakdown in communication between the parents and their inability to communicate and cooperate. *See, e.g., Milner v. Milner*, 10th Dist. No. 99AP-13, *3 (Dec. 14, 1999) * 3 (affirming trial court's finding of a sufficient change of substance based on "the parties' behavior and unwillingness to comply with the terms and spirit of the shared parenting plan[.]"); *Gomez v. Gomez*, 7th Dist. No. 08 NO 356, 2009-Ohio-4809, ¶ 21–34 (citing refusal of mother to communicate with father and extreme volatility requiring police intervention as a change in circumstances). The record is replete with instances demonstrating Ann and Joel's perpetual inability to communicate and cooperate with each other in order to comply with the directives of the trial court's prior custody decree. Accordingly, we conclude the trial court did not err in finding a change in circumstances had occurred since the prior custody decree, which warranted the trial court's consideration of whether a

modification of the custody decree is in Adam's best interest. Therefore, Ann's first assignment of error is overruled.

*Second and Seventh Assignments of Error*

{¶44} In her second assignment of error, Ann contends that the trial court erred in determining that it is in Adam's best interest to modify the prior custody decree to designate Joel as Adam's residential parent. As the basis for her argument in her second assignment of error, Ann claims the trial court erred by not following the recommendation of shared parenting in the custody evaluation report submitted by Dr. Hustak. In her seventh assignment of error, Ann alleges that the trial court erred by not adopting and incorporating this recommendation into the custody decree. Since this argument is similar to the one asserted in Ann's second assignment of error, we will address the contentions raised in both assignments of error together.

{¶45} On appeal, Ann only generally assigns error to the trial court's finding that a modification of the prior custody decree is in Adam's best interest without specifying any particular basis for contending that the trial court erred. However, our review of the record reveals that the magistrate and the trial court considered the appropriate statutory factors in light of the evidence presented, and furthermore the record supports the finding that it is in Adam's best interest to modify the prior custody decree to designate Joel as Adam's residential parent.

**{¶46}** The only arguments articulated by Ann under her second assignment of error pertain to the trial court's conclusion that the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child, which is the final determination under the analysis set forth in R.C. 3109.04(E). In support of her argument, Ann claims the evidence in the record does not support the trial court's conclusion in this regard because, in his custody evaluation report, Dr. Hustak recommended a shared parenting plan that maximizes time with both parents is in Adam's best interest.

**{¶47}** Ann appears to mischaracterize Dr. Hustak's recommendation by isolating his recommendation of shared parenting without discussing it in context. The following is an excerpt from Dr. Hustak's report fully outlining his *qualified* recommendation of shared parenting.

> **It has been stated earlier that the ultimate decision-making in custody cases is obviously up to the trier of fact, and the information contained in this report is an effort to offer scientific statements to assist the trier of fact in assigning weights [sic] to certain types of evidence. An evaluator may offer opinions under the Federal Rules of Evidence 701, which are not based on reasoning or theory, but rationally based on perception. Therefore, the following opinion having to do with options is not based on scientific theory. The court can weigh this opinion at this point forward simply as that, an opinion that derives from every-day experience and is not the direct result of any tests of data which points the court one way or the other in making their determination.**
>
> **With this limitation in mind, it is my opinion, based upon the conclusions reached in this case, that it is best for Adam**

**Eatherton Behringer to have access to both parents in a shared parenting plan that maximizes time with each parent. It would appear that removing Adam from his present home and school environment would be detrimental to his adjustment, and, despite the problems with Ann Eatherton, she is certainly not considered an inadequate mother based upon voluminous amounts of material reviewed in this case. Ann Eatherton's biggest limitation has to do with her caustic comments about Joel Behringer, which at some point, may be adversely affecting Adam now or in the future.**

**In view of these statements, both parents need to participate in recognizing what Adam needs, and that is specifically a shared parenting plan. To accomplish this, it would be my strong recommendation that Ann Eatherton be mandated to participate in immediately seeking out her own personal counseling and psychotherapy. The express goal would be to learn how to eliminate negative shaping behaviors that could contribute to parental alienation syndrome in Adam. She needs to recognize that what she is doing is harmful and that failing to stop saying or doing these negative things threatens not only her relationship with Adam but also her propriety as a shared custodial parent. She needs to be told very bluntly and clearly what she can do differently to cease and desist from generating conflict. If she cannot do this within a reasonable amount of time (four months or less), then it would be my opinion that Adam Behringer's best interest would be advanced by having Joel Behringer assigned as the sole custodian, with Ann Eatherton limited to visitation.**

*(*Id. at 77-78). At the March 18, 2010 hearing on the change of custody determination, Ann admitted that she had not completed personal counseling and psychotherapy despite Dr. Hustak's "strong recommendation" that she be "mandated" to do so. This hearing occurred approximately four months after Dr. Hustak filed his report—which is the amount of time Dr. Hustak considered

-20-

reasonable for Ann to comply with this directive. The record indicates that Ann eventually completed a preliminary diagnostic evaluation after being specifically ordered by the court to do so. However, there is no evidence Ann completed the counseling or psychotherapy in the manner Dr. Hustak prescribed.

{¶48} In addition, we note that when a party files a motion with the trial court seeking modification of parental rights and responsibilities, the trial court may "cause an investigation to be made as to the character, family relations, past conduct * * * of each parent and may order the parents and their minor children to submit to medical, psychological, and psychiatric examinations." R.C. 3109.04(C). While R.C. 3109.04 gives trial courts the ability to order investigations of the parents and child, it does not require the trial court to follow the recommendations contained within the resulting report. Rather, an evaluation ordered pursuant to R.C. 3109.04(C) and its contents, is merely one of the many things the trial court may consider in awarding parental rights and responsibilities, *See Eitutis v. Eitutis*, 11th Dist. No. 2009-L-121, 2011-Ohio-2838, ¶ 85 (a trial court is not required to adopt the recommendations of a psychologist, in full or in part).

{¶49} Thus, even assuming *arguendo* that Dr. Hustak made an *unqualified* recommendation of shared parenting as Ann appears to contend, the trial court was not obligated to adopt his recommendation in its final custody determination.

Accordingly, we do not find that the trial court erred in concluding that the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to Adam on this basis. We further conclude that the trial court's determination in this regard was supported by a substantial amount of competent, credible evidence and therefore its decision does not constitute an abuse of discretion. For all these reasons Ann's second and seventh assignments of error are overruled.

### *Third Assignment of Error*

{¶50} In her third assignment of error, Ann contends that the trial court erred when it found that she interfered with Joel's parenting time.

{¶51} The record demonstrates that Ann was found to be in contempt of court on six separate occasions for interfering with Joel's parenting time. Each contempt finding was based upon evidence submitted at a hearing in which Ann was given a full and fair opportunity to put on evidence in her defense. The trier of fact found that Joel met his burden in proving Ann's interference with his parenting time on each occasion, and that her actions violated the custody decree. Even though Ann eventually purged herself of the contempt findings by paying the court-ordered fines, the fact that she continually interfered with Joel's parenting time, despite being ordered by the court not to do so, is the precise conduct the trial court is required to considered when determining whether to modify a decree

allocating parental rights and responsibilities. *See* R.C. 3109.04(F)(1)(outlining the factors for the court to consider in custody modification including: (f)"The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;" and (i)"Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court").

{¶52} In addition, the change of custody hearing, which occurred several months after the contempt proceedings, included the testimony of twenty witnesses as well as numerous exhibits filed by both parties and the GAL. This evidence provided a sufficient basis for the court to conclude that Ann interfered with Joel's parenting time notwithstanding the previous six contempt findings on the same basis. Accordingly, we find no error in the trial court's conclusion that Ann interfered with Joel's parenting time. Therefore, Ann's third assignment of error is overruled.

### Sixth Assignment of Error

{¶53} In her sixth assignment of error, Ann contends that the trial court erred when it found that she failed to complete her counseling program as directed by Dr. Hustak. Notably, Ann does not articulate on appeal how this finding constitutes reversible error.

{¶54} Nevertheless, the record reveals that, prior to the release of Dr. Hustak's written evaluation, the trial court ordered *both parties* comply with any and all of Dr. Hustak's requests. As previously discussed, at the March 18, 2010 change of custody hearing, Ann admitted to not complying with Dr. Hustak's recommendation that she be mandated to *immediately* participate in counseling and psychotherapy. The transcript of this hearing reveals some proclaimed confusion on Ann's part regarding whether she was actually *ordered* to complete counseling and psychotherapy. As a result, the magistrate subsequently filed an order explicitly instructing Ann to comply with the following directives:

> **Plaintiff, Dee Ann Eatherton, shall immediately enroll in counseling and psychotherapy to address her negative shaping behaviors that could contribute to parental alienation syndrome as recommended by the child custody evaluation submitted to the Court.**
>
> **Plaintiff, Dee Ann Eatherton, shall provide notice to the Court on or before March 26, 2010 the name of the counseling facility and the time and date of her appointment to address the counseling and psychotherapy needs. She shall provide notice to the Court of the name of the counselor once a counselor has been assigned.**
>
> **Plaintiff, Dee Ann Eatherton, shall execute any and all necessary releases to the Court to said facility and counselor. Said facility and Counsel shall forward to Magistrate Hanson written progress reports and compliance with the program and any recommended treatment in compliance with the child custody evaluation dated December 1, 2009.**

(Order Mar. 23, 2010 at 2).

{¶55} The record indicates that the magistrate received a letter dated April 8, 2010 from Century Health informing the court that Ann had completed a diagnostic assessment on April 6, 2010 and that a provisional diagnosis had been made. However, the record also indicates that Century Health further stated in this letter that it would be unable to meet the court's requirements and referred Ann to a local agency specializing in child and family issues. No other documentation was submitted to the magistrate regarding Ann's compliance with the March 23, 2010 order. Accordingly, we find that the trial court did not err in finding that Ann failed to complete her counseling program. Ann's sixth assignment of error is overruled.

*Fourth Assignment of Error*

{¶56} In her fourth assignment of error, Ann contends that the trial court erred in considering the recordings of telephone messages presented during an earlier hearing held on September 11, 2008. Ann argues that since the messages were not presented during the March and June 2010 hearings, the messages are outside the record and could not be considered by the trial court.

{¶57} A trial court may take notice of evidence admitted during prior hearings that occur within the *same or immediate* case. *See In re Callahan*, 3d Dist. No. 9-01-39 (Dec. 24, 2001), citing *Diversified Mortgage Investors Inc. v. Athens County Board of Revision*, 7 Ohio App.3d 157, 159 (4th Dist. 1982); *see*

*also Fischer v. Fischer*, 9th Dist. No. 2144 (July 30, 1986). Our review of the record reveals that the September 11, 2008 hearing, where the messages were presented as evidence, occurred during the prior proceedings of the immediate case (Juv. Case No. 20470086). Even assuming *arguendo* that the messages were not properly admitted as evidence in the immediate case, we find that Ann was not prejudiced by the trial court's consideration of messages since she had an opportunity to challenge the introduction of the messages and explain their contents during the September 11, 2008 hearing. Therefore, we find no error with the trial court's consideration of this evidence. Ann's fourth assignment of error is overruled.

### *Fifth Assignment of Error*

{¶58} In her fifth assignment of error, Ann contends that the trial court erred in considering her strained relationship with her father. However, on appeal, Ann fails to articulate any argument identifying the trial court's consideration of this evidence as reversible error.

{¶59} Nevertheless, R.C. 3109.04(F) directs the trial court to consider, among other things, "[t]he child's interaction and interrelationship with the child's parents, siblings, and *any other person who may significantly affect the child's best interest*[.]" (Emphasis added.) R.C. 3109.04(F)(1)(c). Thus, it is reasonable for a trial court to consider the relationship the mother or father has with their

parents (i.e. the child's grandparents). Such an inquiry may reveal relevant information concerning a parent's ability or willingness to foster a relationship between the child and grandparent(s), a relationship which, in many cases, may significantly affect the child's best interest. Consequently, we find no error in the trial court's consideration of this evidence. Ann's fifth assignment of error is overruled.

{¶60} For all these reasons, the judgment of the Seneca County Juvenile Court is affirmed.

*Judgment Affirmed*

**ROGERS, J., concurs.**
**WILLAMOWSKI, J., concurs in judgment only.**

**/jlr**